LEMON v. CHANSLOR et al., *Appellants.*

1. **Common Carrier of Passengers**: HACKMAN, ACTION AGAINST: PETITION NEED NOT AVER LEGAL CONCLUSIONS. In an action for damages for injuries received by plaintiff, in consequence of the unsoundness of a hack used by defendants in transporting persons from a railroad depot in a city to their several destinations therein, where the petition states that defendants were common carriers, and that plaintiff was accepted by them as a passenger, the law implies an agreement on the part of the plaintiff that he shall pay his fare, and an obligation on the part of defendants that he shall be safely carried, and no express contract to that effect need be averred.

2. ———: ———: REPLICATION: DEPARTURE IN PLEADING: ESTOPPEL. Where the replication averred that the hack, in which plaintiff was being carried, was overloaded, and evidence was offered in support thereof, and objection was made that the petition contained no such averment, and that, therefore, the replication was a departure from the cause of action stated in the petition, and that the evidence was, therefore, incompetent; but it also appeared that the answer averred that the hack was not overloaded, and that plaintiff's motion to strike out this part of the answer had been overruled; *Held*, that if there were a departure in pleading, the defendants, by tendering such an issue in their answer, were responsible for it, and could not be heard to complain of their own act.

3 ———: ———: EVIDENCE, WHEN RECEIVABLE IN REBUTTAL. Plaintiff, in making out his case, offered evidence to prove that he was received as a passenger on defendants' hack, and without any fault of his own received the injuries of which complaint was made. Defendants then offered evidence to show that the hack was sound and well fitted for the service ·to which it was put, that it was not overloaded, and that the accident by which plaintiff was injured could not have been avoided by any precautions on their part. Plaintiff then offered evidence to rebut that given by defendants, and it was objected that this evidence should have been offered as part of the plaintiff's case, in chief. *Held*, that the evidence was properly received in rebuttal.

4. ———: WITNESS, IMPEACHMENT OF. Where defendants attempted to impeach plaintiff's witness by proving he had said, that if plaintiff recovered in the suit there would be money in it for him; *Held*, there was no error in allowing plaintiff to be recalled, and to state that he had never, directiy or indirectly, offered witness any money or reward; that such testimony could not prejudice defendants, as it tended to show that witness' statement was false, and was, therefore, in aid of defendants' object, the impeachment of the witness.

5. ———: DUTIES OF: ONUS PROBANDI. It is the duty of carriers of passengers, as far as they are capable by human care and foresight, to carry safely those whom they take into their coaches, and they are responsible for any, even the slightest, neglect; and when the passenger suffers injury by the breaking down or overturning of the coach, the presumption, *prima facie*, is that it was occasioned by some negligence of the carrier, and the *onus probandi* is upon him to establish that there has been, on his part, no negligence whatever, and that the injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent.

6. GRATUITOUS PASSENGER. In such case, the fact that the person receiving the injury was a gratuitous passenger, constitutes no defense.

*Appeal from Saline Circuit Court.*—Hon. Wm. T. Wood, Judge.

The following instructions were given for plaintiff:

1.   If the jury believe from the evidence that on the 3rd day of February, 1874, the defendants, in conjunction with their livery stable, were engaged in the business of running hacks, coaches and omnibuses to and from the Missouri Pacific Railroad to and from the different points in Lexington, for the conveyance of persons for hire, then they were bound to provide safe, staunch and roadworthy conveyances, with careful drivers, so far as human foresight, skill and knowledge and care could provide, and they are responsible for all injuries arising from slight negligence on the part of themselves, their agents or servants; if, therefore, the jury believe from the evidence that on the 3rd day of February, 1874, plaintiff took passage in one of the coaches of defendants, that while the same was being driven at a moderate gait it suddenly broke down by reason of the front axle breaking, or other cause, and that the hack was turned over and the plaintiff injured thereby, then it rests on the defendants to prove to your satisfaction that said hack was safe, sound, roadworthy, not overloaded and carefully driven, and that said axle broke, and said accident arose from and was caused by inevitable accident or defect that could not have been seen, detected or known to defendants, their servants or agents, by the exercise of the utmost skill, knowledge, foresight, care, inspection and examination of said coach by defendants, their agents or servants, and unless the jury so believe they will find for plaintiff.

2.   If the jury believe from the evidence that on February 3rd, 1874, the defendants were engaged in the business of transporting passengers from the railroad depot in Lexington to any and all points of said city, and that on said day the plaintiff was received by them, or their agents at said depot to be carried on one of the hacks of defend-

ants, and that while being so transported on said hack plaintiff was injured by reason of the breaking of an axle on said hack, then the burthen of proof rests upon defendants to prove to the satisfaction of the jury that said break-down was caused by inevitable accident and not from any defect, imperfection in the hack, overloading or careless driving, and that by the exercise of the utmost human foresight, knowledge, skill and care, such injury could not have been prevented by defendants, their agents or servants, and unless the jury so believe they will find for the plaintiff.

3. Even though the jury may believe from the evidence that plaintiff did not pay, and did not expect to pay any fare for riding on defendants' hack on the day the break-down occurred, they are instructed that said fact does not affect the issues in this case, and is no defense on the part of defendants, but the jury are instructed, that if they believe from the evidence that plaintiff was the conductor on the express train, that defendants run hacks and busses in connection with the coming in and departing of said trains, that defendants sold tickets on the train, and that plaintiff was in the habit of telegraphing, before arriving at Lexington, notifying defendants of the number of persons on his train, and of the number of conveyances they could expect to find employment to carry; that in consideration of said services so rendered by plaintiff, the defendants allowed him to ride in their conveyances without paying fare therefor, then plaintiff was not a free or gratuitous passenger.

4. Even though the jury may believe from the evidence that on the morning said hack started to the depot, the axle and spindles thereof, so far as human foresight, knowledge, care and skill could detect, were sound, safe and roadworthy, yet, if the jury should further believe from the evidence that while said hack was run and used in the business of defendants on said trip, and while the roads were rough and frozen, the said hack was, for the character of the roads, loaded beyond what a safe and prudent

man would have placed on the same, or that from the carelessness of the driver while on said trip in either over-loading the hack or in driving said hack on said trip, and that by reason of said load or of the conduct of the driver said hack was broken down and the plaintiff injured, then the jury will find for the plaintiff.

5.   If the jury should find for the plaintiff, they will assess the damages at such sum not exceeding $5,000, as they may think will compensate plaintiff for loss of time, amount paid for medical attendance and all mental and bodily pain and anguish they may believe he has suffered, together with such sum or sums as will compensate plaintiff for any permanent injury or incapacity, they may believe he has sustained by and from such injuries so received.

The following instructions were asked by the defend-ants, all of which, with the exception of the first and sixth, were given by the court:

1.   The jury are instructed that this is a suit brought by plaintiff against defendants for damages for an alleged injury to the knee and leg of plaintiff, charged to have been caused by the recklessness and negligence of defend-ants in using a hack in their business of carrying passen-gers to and from the depot of the Missouri Pacific Railroad at Lexington, Missouri, in which plaintiff claims to have been a passenger on the 3rd day of February, 1874, and which hack is charged by plaintiff to have been then and there unsound, unsafe and unfit for use; and plaintiff claims to have been injured by the breaking down of such hack, owing to the unsafe and unsound condition and the negligence of defendants in the using of the same in such unsafe and unsound condition; and unless the jury believe from the evidence that said hack was unsound and unsafe, and that the alleged injury to the leg and knee of plaintiff was caused by the negligence of defendants in using of the same in such unsound and unsafe condition for the trans-portation of passengers, the jury will find for the defend-ants.

2.   If the jury believe from the evidence that, at the time of the injury complained of by plaintiff, the defendants were the owners and keepers of a livery stable in the city of Lexington, Missouri, and as part of their business ran a hack or hacks, or an omnibus, to and from the depot of the Lexington & Sedalia branch of the Missouri Pacific Railroad, and the business portion of said city, near the City Hotel, and that plaintiff, according to his custom, on the morning of the 3rd day of February, 1874, on the arrival of the train of which he was conductor, at such depot, entered one of the vehicles, to-wit: a hack of defendants, with the passengers, to ride to the business part of said city, near the City Hotel, and that after going a short distance the left spindle of the front axle of such hack suddenly, and without warning to the driver and manager of such hack, broke off at the shoulder thereof, and that plaintiff, who was riding on the front seat with the driver, fell from such hack and was injured in his leg and knee by the falling of the forepart of such hack on his leg; yet if the jury further believe from the evidence that such hack was sound, sufficient, roadworthy and safe, so far as could be seen or known by minute and careful examination, and that the same was drawn by good and sufficient and well trained and gentle horses, with suitable trappings and equipments for such hack and horses, and that the same were driven by an experienced, competent, safe and careful driver, on the usually traveled route, at a moderate rate of speed, and that such hack was not overloaded, and that the breakage of such spindle occurred accidently and without the fault or negligence of defendants, or their servants or agents, while such hack was being used, managed and driven in a careful, skillful and proper manner, from some cause imperceptible and unknown to defendants, and which the utmost skill, care and diligence could not foresee, then and in such case, defendants are not liable to plaintiff in the suit, and the jury will find for the defendants.

3.   Although the jury may believe from the evidence

that plaintiff, on the 3rd day of February, 1874, was injured by the breaking of the left front spindle of a hack of defendants, and the falling of a part of said hack on the leg of plaintiff, in the falling of such hack caused by the breaking of such spindle, yet, if the jury further believe from the evidence that the breaking of such spindle occurred accidentally from some cause or causes, imperceptible and unknown to defendants, and which the utmost skill, foresight and diligence could not prevent, then the defendants are not liable to plaintiff in this suit, and the jury will find for the defendants.

4. The jury are instructed, that if they believe from the evidence that the breaking of the spindle of defendants' hack at the time of the injury complained of by plaintiff, was accidental, and such as human foresight and prudence could not have foreseen or guarded against, or such as did not result from the negligence of defendants or their servants defendants are not liable in this action.

5. The jury are instructed that whatever the injuries received by plaintiff may be, yet, defendants are not liable therefor unless such injuries resulted from the negligence or misconduct of defendants, or their servants, and unless the jury believe from the evidence that such negligence or misconduct existed at the time, they must find for defendants.

6. Although the jury may believe from the evidence that defendants were, at the time of the injury received by plaintiff, engaged in the business of carrying passengers to and from the depot at the city of Lexington, or other place, yet if the jury further believe from the evidence that the injury received by plaintiff was so received whilst traveling in or upon one of defendants' hacks as a free passenger, without charge therefor, and not by special invitation from defendants, then plaintiff cannot recover, unless the jury are satisfied from the evidence that plaintiff's injury resulted from the negligence of defendants in not providing a careful and prudent driver, or in failing to provide a suit-

able hack for the occasion; and the jury are further instructed, that if they believe from the evidence that plaintiff was a gratuitous passenger at the time of such injury, these defendants were only bound to furnish such a conveyance as ordinary prudence and foresight could not discover as unsafe at the time.

7. The jury are instructed that by the pleadings in this cause, it stands admitted that the said hack, (called the Jones hack,) was at the time of the breaking of said spindle, drawn by good and sufficient and well trained and gentle horses, with suitable harness, trappings and equipments for such hack and horses, and that the same was driven by an experienced driver.

8. The jury are instructed that it is their province to judge of weight, and to determine the weight and credibility of the testimony and evidence of all witnesses in the cause, and if they find such evidence and testimony conflicting, they may believe such parts and portions thereof, as from all the facts and circumstances in evidence they believe to be most consonant and consistent with the truth, and may reject such parts and portions of such evidence as they believe to be untrue or inconsistent with other facts in evidence, which are believed by them.

9. If the jury believe from the evidence that any witness or witnesses in the cause has willfully sworn falsely to any material fact or facts in the case, then the jury are at liberty to reject the whole of the testimony of such witness or witnesses, if from the evidence they believe it ought to be so rejected.

The jury found the issues for the plaintiff, and assessed his damages at the sum of $1,000.

*Wallace & Chiles* for appellants.

1. The petition does not state facts sufficient to constitute a cause of action. It avers that defendants are "common carriers of persons for hire," and yet, it no

where avers that plaintiff paid, or agreed to pay, or was to pay any sum of money, or any reasonable or other hire or reward for his conveyance in defendants' hack. Besides, it appears from the petition that defendants are not of the class of persons on whom the law imposes an obligation to carry, unconnected with any contract between the parties; they are not common carriers of persons, but livery stablemen and hackney coachmen: and hence, in order to the statement of a cause of action against them, a consideration for the duty or obligation must be averred. 1 Chitty's Plead., (10 Ed.) s. p. 136, 137, 383, 384; 2 Ibid., s. p. 362; Story's Bail., (5 Ed.) §§ 498, 499, 590.

2. There is error on the face of the record proper, in this case, in this, that the replication is a departure from the allegations of the petition, in material matter; the *gravamen* of plaintiff's action, as set out in his petition, is, that the hack of defendants was unsound, unsafe and unfit for use, and the alleged recklessness and gross negligence of defendants in using the same in their business; in his replication, plaintiff, in part, and as additional cause of action, avers the overloading of said hack, over rough and frozen roads, and negligence of the driver and agents of defendants in loading and driving said hack—which is inadmissible. 1 Chitty's Plead., (10 Ed.) s. p. 643, 644. Plaintiff's cause of action must be stated in his petition not in his replication. 2 Wag. Stat., § 15, p. 1017; *State ex rel. v. Griffith*, 63 Mo. 548; *Huston v. Forsyth Scale Works*, 56 Mo. 416; *Schneider v. Meyer*, 56 Mo. 475, 478.

3. Plaintiff having averred negligence against defendants, it devolved on him to prove such negligence, originally, and as part of his case, in chief, and he could not offer evidence for that purpose in rebuttal, as he did in the depositions of James, Hunt and Russell. *Read v. St. Louis, K. C. & N. R. R. Co.*, 60 Mo. 199, 206; 1 Greenl. on Ev., (4 Ed.) § 74, and note 3.

4. The court erred in permitting plaintiff recalled after the reading of the deposition of Albert Loomis, to

state in answer to a direct and leading question by his attorney, against the objections of defendants, that he never directly or indirectly offered Al. Hunt any reward for testifying in this case, as the evidence of Loomis impeached Al. Hunt, not plaintiff, and this evidence of plaintiff tended to mislead the jury, by breaking the force of the impeachment of Hunt.

5. The instructions given for plaintiff do not correctly state the law of this case against defendants as hackney coachmen. *Meier v. Penn. R. R. Co.*, 64 Pa. St. 225; *Smith v. N. Y. Cen. R. R. Co.*, 24 N. Y. 222; Story on Bail., (5 Ed.) §§ 498, 499, 590, 592, 495; 2 Kent Com. (6 Ed.) p. 600; *Hill v. Sturgeon*, 35 Mo. 212; *Ingalls v. Bills*, 9 Met. 1; *Boyce v. Anderson*, 2 Pet. 150; *Ready v. S. B. Highland Mary*, 17 Mo. 463; *Chouteau & Valle v. S. B. St. Anthony*, 20 Mo. 519; *Wolf v. The Am. Ex. Co.*, 43 Mo. 421; *Wiser v. Chesley*, 53 Mo. 547; *Jones v. Jones*, 57 Mo. 138; *Wyatt v. The Citizens R. R. Co.*, 62 Mo. 408.

6. The first instruction asked by defendants should have been given. *Wells v. N. Y. Cen. R. R. Co.*, 24 N. Y. 181; *Perkins v. N. Y. Cen. R. R. Co.*, 24 N. Y. 196; *Bissell v. N. Y. Cen. R. R. Co.*, 25 N. Y. 442. The sixth instruction asked by defendants, is a just, clear and fair enunciation of the law in regard to a free or gratuitous passenger, and comes fully within the doctrine sanctioned by this court in *Gray v. Mo. River Packet Co.*, 64 Mo. 47.

8. The instructions given for plaintiff are inconsistent with those given for defendants; defendants' instructions being based on the law of *carriers of passengers* who are not insurers, and are not liable to the extent of *common carriers*, and plaintiff's instructions being framed on the theory that defendants are stage or hackney coachmen, are liable for everything short of "*inevitable* accident," and hence, are a kind of insurers or warrantors of the safety of the passengers, which inconsistency is error, as the jury is as apt to act on the one as the other. *Henschen v. O'Bannon*, 56 Mo. 289.

*Phillips & Vest* for respondent.

1.   The first instruction asked by defendants was properly refused. It ignored entirely the issues made by the pleadings as to the careless driving of the hack and its being overloaded. After forcing these issues upon the plaintiff, it is too late now for the defendants to complain of their being found against them. They are estopped from so doing. 1 Chitty's Plead., (7 Ed.) s. p. 648.

2.   The sixth instruction asked by defendants was properly refused. There is no difference in the degree of care required of passenger carriers in the transportation of passengers for hire and gratuitous passengers. *Philadelphia & Reading R. R. Co. v. Derby*, 14 How. 486; *Steamboat New World v. King*, 16 How. 474: Redf. on the law of Rys., (4 Ed.) vol. 2, 210, and notes; *Indianapolis & St. Louis R. R. Co. v. Horst*, 93 U. S. 295; Angell on Carr., (4 Ed.) § 528, p. 439; *McPheeters v. Hann. & St. Jo. R. R. Co.*, 45 Mo. 26.

3.   The instructions given properly declare the rule as to the liability of passenger carriers. They are held to all the skill and diligence of which human care and foresight is capable, and whether they have exercised such care and foresight is a question for the jury. Angell on Carr., (4 Ed.) § 534, *et post*, and § 569, pp. 457, 497; Hilliard on Torts, (3 Ed.) p. 571; *Morrissey v. Wiggins Ferry Co.*, 43 Mo. 380; *Higgins v. Hann. & St. Jo. R. R. Co.*, 36 Mo. 418; *Sawyer v. Hann. & St. Jo. R. R. Co.*, 37 Mo. 240; *Taylor v. Grand Trunk Ry. Co.*, 47 N. H. 304; *Meier v. Penn. R. R. Co.*, 64 Pa. St. 225.

4.   The proof in this case shows that defendants ran coaches and omnibuses to the depot of the railroad upon the arrival and departure of every train, not waiting for the orders of individual passengers, but soliciting the patronage of the public at large, and ready to receive all persons offering themselves as passengers. They did not follow the business as livery men and hackney coachmen,

but as common carriers. 2 Greel. Ev., (13 Ed.) § 286, p. 186.

*Rathbun & Shewalter* for respondent.

1. The burthen as to negligence was on the defendants. *Ware v. Gay*, 11 Pick. 106 ; *Perkins v. N. Y. Cen. R. R. Co.*, 24 N. Y. 196, 200 ; *Stokes v. Saltonstall*, 13 Peters 181 ; Story on Bail., pp. 529, 592, § 601 ; *Wolf v. The Am. Ex. Co.*, 43 Mo. 421 ; *Hill v. Sturgeon*, 28 Mo. 323 ; *Higgins v. Hann. & St. Jo. R. R. Co.*, 36 Mo. 432 ; 2 Parson on Cont. (5 Ed.) p. 224.

2. That the passenger is riding gratuitously, or by invitation, is no defense. 2 Parsons Cont., pp. 219, 222, (Ed. of 1866) ; *New World v. King*, 16 How. 469 ; 1 Smith Lead. Cases, p. 218 ; *Philadelphia & Reading R. R. Co. v. Derby*, 14 How. 468 ; *Todd v. Old Col. R. R. Co.*, 3 Allen 21 ; *Gillenwater v. Madison R. R. Co.*, 5 Ind. 340 ; *Nolton v. West. R. R. Co.*, 15 N. Y. 444 ; Story on Bail., (7 Ed.) § 590 ; *Thurman v. Wells*, 18 Barb. 500 ; *Great N. R. R. Co. v. Harrison*, 26 Law & Eq. 443 ; *Gladwell v. Steggall*, 5 Bing. (N. C.) 733 ; *Shiells v. Blackburne*, 1 Hen. Bl. 158 ; 2 Mees. & Wells. 143 ; *McPheeters v. Hann. & St. Jo. R. R. Co.*, 45 Mo. 22 ; *Mueller v. Putnam Ins. Co.*, 45 Mo. 84 ; *Wells v. N. Y. Cen. R. R. Co.*, 24 N. Y. 181 ; *Huelsenkamp v. Citizens Ry. Co.*, 37 Mo, 537 ; 43 Mo. 380 ; *Christie v. Griggs*, 2 Camp. 80.

NORTON, J.—This suit was instituted in the Lafayette circuit court for the recovery of damages for injuries alleged to have been received by plaintiff, in consequence of the unsoundness of a hack used by defendants, as common carriers, in transporting persons from the depot of the Missouri Pacific Railroad, in the city of Lexington, to different points in said city. The petition alleges that plaintiff was received by defendants, as a passenger, and that the hack used by them was unsound, unsafe and unfit for such use, in consequence of which, and the recklessness and

gross negligence of defendants in using the same, it suddenly broke down, thereby greatly injuring plaintiff and disabling him permanently. The answer of defendants, after denying the allegations of the petition, sets up by way of defense that they were the owners of a livery stable in Lexington, and kept horses and vehicles for hire, and that they were accustomed to send hacks to said depot for the purpose of conveying passengers therefrom to different points in the city, and avers that defendants were not common carriers of persons, but were livery men and hackney coachmen. The answer further avers that plaintiff was a conductor on the railroad from Sedalia to Lexington, which came to and departed from said depot the morning and evening of each day; and that plaintiff was accustomed, as a gratuitous passenger, to enter into the hacks of defendants and to be carried to and from said depot. That plaintiff, on the day the injury was sustained, entered a hack of defendants without paying or expecting to pay fare; that said hack so entered was sound and roadworthy so far as could be seen or known by human foresight, skill and diligence. It is also alleged that said hack was drawn by well trained and gentle horses, which were driven by an experienced and competent driver; that the hack was not overloaded, but, from some cause unknown, and which the utmost skill and diligence could not foresee, the left spindle of the front axle gave way and occasioned the injury of which plaintiff complains.

After a motion to strike out all of said answer setting up new matter was overruled, plaintiff filed his replication traversing the same. Upon a trial of the cause, which was had in the circuit court of Saline county, the venue of the cause having been changed, the plaintiff obtained judgment for $1,000, from which the defendants have appealed to this court. Besides the usual errors assigned are the following: First, That the petition does not state facts sufficient to constitute a cause of action. Second, That error was committed by the court in refusing to strike out

parts of replication. Third, That the court erred in admitting illegal evidence, and in giving improper and refusing proper instructions.

It is claimed, in support of the first objection, that the petition is defective in not stating that plaintiff paid, or agreed to pay, any sum for his conveyance in defendants' hack, and because of the lack of this averment, it is argued that no contract existed between plaintiff and defendants, and consequently no cause of action. The averments in the petition charge that defendants are common carriers, and that plaintiff was accepted by them as a passenger. In such case the law implies a contract that the passenger shall pay his fare for being carried, and that he shall be safely carried, and an express contract need not be averred. *Frink v. Potter*, 17 Ill. 406 ; *Thorne v. Cal. Stage Co.*, 6 Cal. 232; *Great Western Ry. Co. v. Braid*, 1 Moore P. C. (N. S.) 101. " The obligation of a carrier to carry safely, arises out of a public duty, and not from any contract to do so," and the promise to carry safely is implied from the duty, not the duty from the promise. Story on Bail., (9 Ed.) § 590, note 1.

2. The same objection, and for the same reasons, having been made to the action of the court in receiving evidence, that was made to its action in refusing to strike out parts of replication, we will consider it under the third cause assigned for error. Plaintiff offered evidence, which was received, tending to show that the hack in which he was being carried was overloaded. The evidence was objected to on the ground that the petition contained no averment that it was overloaded, and that, therefore, the replication containing such averment was a departure from the cause of action stated in the petition. It will be observed that defendants in their answer, after a specific denial of the averments of the petition as to the unsoundness of the hack, alleged as new matter that it was drawn by safe horses, was driven

**Marginal notes:** 1. COMMON CARRIER OF PASSENGERS: hackman, action against: petition, need not aver legal conclusions.

2. ——: ——: replication: departure in pleading: estoppel.

23—68

by a careful driver, and was not overloaded. Plaintiff
filed his motion to strike out this part of the answer, which
the court overruled, making it necessary for him to put
these facts in issue if they were not true, by denying them
in his replication. If this, as is contended, amounts to a
departure in pleading, the defendants, by tendering the
issue in their answer, are responsible for it, and ought
not now to be heard to complain of a consequence of their
own act. Besides this, the hack from the mere fact of·
having been overloaded, if such were the fact, may have
been rendered unfit for the service to which it was put.
Chit. Plead., (16 Ed.) vol. 1, 677, 679.

After the defendants had closed their evidence, plaintiff
was permitted to read in rebuttal the depositions of Joseph
James, Al. Hunt and A. D. Russell. The
3. ____ : ____ :
evidence, when
receivable in re-
buttal.
evidence was objected to on the ground that
it was not in rebuttal, but should have been
offered as evidence in chief. We think the objection was
properly overruled. "*Prima facie*, when a passenger re-
ceives injury while being carried on a train without fault
of his own, there is legal presumption of negligence cast-
ing upon the carrier the *onus* of disproving it. This is the
rule when the injury is caused by defect in the road, cars
or machinery, or by a want of diligence or care of those
employed, or by any other thing which the company can
and ought to control as a part of its duty to carry the pas-
senger safely; but this rule of evidence is not conclusive.
The carrier may rebut the presumption, and relieve him-
self from responsibility by showing that the injury arose
from an accident which the utmost skill, foresight and
diligence could not prevent. *Meier v. Penn. R. R.* Co., 64
Pa. St. 225; Sherman & Redfield on Neg., § 280; Red on
Rail., § 1760 ; *Leveriny v. Union Trans. & Ins. Co.*, 42 Mo.
88 ; Story on Bail., (9 Ed.) § 601. The evidence con-
tained in the depositions tended, as we think, to rebut that
offered by defendants, and was, we think, clearly admis-
sible.

Nor do we perceive any error in allowing the plaintiff to be recalled to state that he had never, either directly or indirectly, offered witness, Hunt, any money or reward for testifying in the case. After the attempt made by defendants to impeach said Hunt by proving that he had said if plaintiff recovered in the suit there would be money in it to him, we cannot see how defendants could have been injured by the evidence, even although it might be objectionable. It could not have prejudiced them, for it tended to show that the statement made by Hunt was false, and was, therefore, in aid of the object that defendants had in view, viz. : the impeachment of Hunt. The other objections made to the introduction of evidence not affecting either the substance or merits of the case will not be considered.

4. ——: witness, impeachment of.

Five instructions were given at the instance of plaintiff, all of them being excepted to, and of the nine asked for by defendants, all were given except the first and sixth, which were refused, to which action exception was saved. The instructions given as well as those refused, will appear in the report of the case. The first and second instructions substantially tell the jury that if they believed from the evidence that plaintiff took passage in one of defendants' hacks and coaches, and that while the same was being driven at a moderate gait, it suddenly broke down by reason of the front axle giving way, whereby plaintiff was injured, that it rested on defendants to show that the hack was sound and roadworthy, and that the accident was caused by a defect that could not have been seen, detected or known by defendants by the exercise of the utmost skill, knowledge and inspection of said hack. It is insisted that the *onus* of proving negligence was on the plaintiff, and that the instructions are erroneous in shifting the burthen to defendants, and also because they hold defendants liable for slight neglect. The instructions, we think, are in strict harmony with the authorities. In Story on Bail., § 601, in which the liability

5. ——: duties of: onus probandi.

of passenger carriers is treated of, it is said " as they undertake for the carriage of human beings whose lives, limbs and health are of great importance to the public as well as themselves, the ordinary principle in criminal cases where persons are made liable for personal wrongs and injuries from slight neglect, would seem to furnish the true analogy and rule. It has been accordingly held that passenger carriers bind themselves to carry safely those whom they take into their coaches as far as human care and foresight can go, that is for the utmost care and diligence of very cautious persons, and of course they are responsible for any, even the slightest neglect." The same principle is announced in the following authorities: Angell on Carr., § 569; *Ingalls v. Bills,* 9 Met. 1; *Christie v. Griggs* 2 Camp. 80; 11 Pick. 106; *Taylor v. Grand Trunk Ry. Co.,* 48 N. H. 304; *Stokes v. Saltonstall,* 13 Peters 181. In the last case cited the subject is thoroughly and exhaustively discussed. " When damage or injury happens to the passenger by the breaking down or overturning of the coach, the presumption, *prima facie,* is that it occurred by the negligence of the coachman, and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatever, and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent. For the law will, in tenderness to human life and limbs, hold the proprietors liable for the slightest negligence, and will compel them, by satisfactory proofs, to repel every imputation thereof." Story on Bail., § 601; *Higgins v. Hann. & St. Jo. R. R. Co.,* 36 Mo. 432; *Meier v. Penn. R. R. Co.,* 64 Pa. St. 225; *McKinney v. Neil,* 1 McLean C. C. R. 540. In *McKinney v. Neil, supra,* it was held that the upsetting of a stage coach is *prima facie* evidence of negligence, and a passenger who has been injured need show nothing more to sustain his action, and it will then be incumbent on defendant to show, by way of reducing the damages or in bar of the action, the circumstances of the case. The

above authorities fully warrant instructions one and two given for plaintiff, and justified the court in refusing number one asked by defendants.

It is insisted that the third instruction in which the jury were, in effect, told that if plaintiff was a gratuitous pas-

6. GRATUITOUS PAS- senger, such fact constituted no defense,
SENGER and if they believed that in consideration of plaintiff notifying defendants by telegraph before the arrival of trains at Lexington of the number of persons therein who would require transportation from the depot, defendants allowed plaintiff to ride in their hacks without paying fare, that then plaintiff was not a gratuitous passenger. It is claimed that this instruction should not have been given, because there was no evidence on which to base it, and because it does not assert a correct principle. Mr. Chanslor, one of the defendants, in his evidence states that the conductor would sometimes telegraph for extra hacks; that he had told his men not to charge the conductor or railroad men. Plaintiff, in his evidence, states that he was in the habit of telegraphing to defendants before the arrival of his train the number of persons who would be likely to require carriage by them. This, we think, was sufficient to authorize the instruction. The principle announced in it, that although plaintiff might have been a gratuitous passenger, such fact constituted no defense, is supported by all the authorities which have come under our observation. While in some of them intimations are made that in the case of a gratuitous passenger, the carrier may only be liable for gross negligence, it has not been held in any of them that such fact would exempt the carrier from all liability. On the contrary, the weight of authority favors the doctrine of holding the carrier of passengers to the same degree of diligence in all cases where one has been received as a passenger, on the principle that if "a man undertakes to do a thing to the best of his skill, when his situation or profession is such as to imply skill, an omission of that skill is imputable to him as gross neg-

ligence." *Shiells v. Blackburne*, 1 H. Bl. R. 115, 158; 2 Mees. & Welsb., 143. In the case of *Philadelphia & Read. R. R. Co. v. Derby*, 14 How. 468, it was held that "if plaintiff was lawfully on defendant's railroad at the time of the collision, and the collision and consequent injury to him were caused by the gross neglect of one of the servants of defendant then employed on the road, he was entitled to recover, notwithstanding the circumstance that he was a stockholder in the company, and was riding by invitation of the president, paying no fare, and not in the usual passenger car." It was also observed that "when carriers undertake to convey persons by the powerful and dangerous agency of steam, public policy requires that they should be held to the greatest possible care and diligence, and whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance or the negligence of careless servants. Any negligence in such cases may well deserve the epithet of gross." This case was followed in the case of *Indianapolis R. R. Co. v. Horst* 93 U. S. 291; *Steamboat New World v. King*, 16 How. 469; *New York Cen. R. R. Co. v. Lockwood*, 17 Wall. 357.

In section 528, Angell on Carriers, it is stated that "the circumstance that the passenger is a steam-boatman, and as such is carried gratuitously, does not deprive him of the right of redress enjoyed by other passengers." If the above authorities go no further, they at least conclusively settle the question that a gratuitous passenger can recover for an injury occasioned by the gross neglect of the carrier, and also, that in such cases any negligence is gross negligence. This latter principle has been recognized by this court in the case of *McPheeters v. Hann. & St. Jo. R. R. Co.*, 45 Mo. 26, in which Judge Wagner observes that "counsel for appellant lay great stress on the assumption that gross negligence should be proved before defendant could be held liable. In England it is now the course of adjudication, and definitely settled, that there is no differ-

ence between negligence and gross negligence, the latter being nothing more than the former with the addition of a vituperative epithet." The cases of *Brady v. Steamboat Highland Mary*, 17 Mo. 461, and *Gray v. Mo. River Packet Co.*, 64 Mo. 47, to which we have been cited, do not apply. In the former the only point decided was that "negligence is not a conclusion of law simply from the fact that a boat passed a dangerous point in the river, known to be difficult to pass, in the night." In the latter case the principle contended for by defendants was said to be correct when applied to a mere mandatory as contradistinguished from a common carrier.

While the fifth of plaintiff's instructions, from the failure of the court to insert the words " from the evidence " after the words " think " and " believe," when they occur therein, is objectionable in its phraseology, and subject to the criticism made by counsel, we are of the opinion that the jury could not be misled by their non-insertion, as they were necessarily implied.

The evidence tended to show that plaintiff was incapacitated by the injury to transact business for three months, during which time he suffered great pain; that he was still suffering from it, and that it was of a permanent nature. These matters were properly referred to the jury for consideration by them in their estimation of damages; and the question as to whether the injury was occasioned by the negligence of defendants has been fairly submitted to the jury. The judgment will be affirmed, with the concurrence of the other judges.

AFFIRMED.