LEONA BRYAN, Respondent, v. THE MISSOURI PACIFIC
RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 29, 1888.*

1. **Railroads**: DUTIES TO PASSENGERS: NEGLIGENCE IN CARE OF
PASSENGER ON A FREE PASS WITH EXEMPTION CLAUSE:   CASE
ADJUDGED. The plaintiff here was not merely a gratuitous pass-
enger, without payment of fare or other consideration, but was a
passenger upon a free pass, expressly conditioned that the person
accepting it, assumed all risks of accident and damages without claim
upon the company. It is well settled, in this state, whatever may
be the rulings elsewhere, that any negligence, in such cases as this,
is gross negligence,—(there are no degrees of negligence in such
cases),—where the passenger is without fault (as in this case).
The law attaches this responsibility to the employment of the
defendant, and when it assumed the calling it had no power over
the duties which the law annexes to that calling. *Held* that the
conditions of the pass contract did not shield defendant from the
consequences of its own negligence.

2. ——: ——: GROUNDS OF LIABILITY AND DEGREE OF RESPONSI-
BILITY. The degree of responsibility to which carriers of passen-
gers are subjected,—they being bound to the utmost care and skill
in the performance of their duty to them,—is not ordinary care,
which will make them liable only for ordinary neglect, but extra-
ordinary care, which renders them liable for slight neglect. Public
policy and safety require that they should be held to the greatest
possible care and diligence, and that the personal safety of the
passengers should not be left to the sport of chance or the negli-
gence of a careless agent. (*Huelsenkamp v. Railroad*, 37 Mo. 538).
The same degree of care is required for a gratuitous passenger, as
would be required in the case of a passenger paying his fare, and the
same liability incurred, and conditions of exemption will not
absolve the carrier from liability. (*Jacobus v. Railroad*, 20 Minn.
125).

---

* NOTE :—This opinion was not delivered to me by the clerk until
December 24, 1888.—*Reporter.*

*Appeal from Jackson Circuit Court.*—HON. JAMES H. SLOVER, Judge.

AFFIRMED.

The case is stated in the opinion.

*Adams & Bowles*, for the appellant.

( 1 ) The court erred in giving the plaintiff's instructions, which ignored the fact that the plaintiff was a gratuitous passenger, riding on a pass which stipulated that she assumed all risk from accident and danger to her person. This fact appeared in appellee's proof, and the court erred in instructing the jury that the fact that she was a gratuitous passenger did not affect the issues in the case, and was no defense. *McCawley v. Railroad*, L. R. 8 Q. B. 57 ; *Hall v. Railroad*, L. R. 10 Q. B. 437 ; *Wells v. Railroad*, 26 Barb. 641 ; *Bissell v. Railroad*, 25 N. Y. 442 ; *Maginn v. Dunsmore*, 56 N. Y. 168 ; *Henning v. Railroad*, 34 N. J. Law, 513 ; *Griswold v. Railroad*, 53 Conn. 371 ; *Railroad v. Reed*, 37 Ill. 484 ; *Railroad v. Bishop*, 50 Ga. 465, 473 ; *Annes v. Railroad*, 67 Wis. 46. ( 2 ) The court erred in refusing to give the defendant's seventh and eighth instructions. Plaintiff being only a gratuitous passenger on the pass containing the stipulations thereon, defendant was only required to exercise ordinary care in transporting her. The strict rule of law, as to the extraordinary care required in transporting passengers for hire, does not obtain in such a case as this. See authorities cited *supra*.

*Twitchell & Randolph*, for the respondent.

( 1 ) The obligation of appellant to transport respondent over its road without negligence on its part was in every respect the same as in the case of a passenger for hire. *Lemon v. Chanslor*, 68 Mo. 357, and authorities there cited ; *Carroll v. Railroad*, 88 Mo. 244 ; *Tibby v. Railroad*, 82 Mo. 300, 301 ; *Potts v. Railroad*, 17

Mo. App. 394; *Jacobus v. Railroad*, 20 Minn. 125, and authorities there cited; 18 Am. Rep. 361; *Railroad v. Thompson*, 5 West. Rep. 838; *Railroad v. Derby*, 14 How. [U. S.] 468; *Todd v. Railroad*, 5 Allen [Mass.] 19; *Railroad v. Bausch*, 6 Cent. Rep. 121. (2) The instructions given by the court for respondent have been repeatedly approved by the supreme courts of this and other states and by the supreme court of the United States. *Lemon v. Chanslor*, *supra*; *Hipsley v. Railroad*, 88 Mo. 384; *Wilkerson v. Railroad*, 26 Mo. App. 144; *Jacobus v. Railroad*, *supra*; *Railroad v. Roy*, 102 U. S. 451; *Stokes v. Saltonstall*, 13 Pet. 181; *Railroad v. Thompson*, 56 Ill. 138; *Railroad v. Yarwood*, 17 Ill. 509. (3) Even if there is a distinction between the care required of a railroad company in carrying passengers for hire and in carrying them gratuitously, defendant cannot avail itself of such distinction in this case, as the point was not raised by the answer. Bliss on Code Pleading, sec. 330; *Maybee v. Moore*, 90 Mo. 340.

Ramsay, J.—The plaintiff brings this action to recover damages for injuries alleged to have been occasioned to her person by the negligence of the defendant. The petition contains two counts, in the first of which it is stated that the injuries were caused by reason of the negligent, unsafe and dangerous condition of the defendant's roadbed and track, and by reason of the negligent, unsafe and careless manner in which defendant's train, in which plaintiff was a passenger, was operated; and in the second it is alleged that plaintiff received further injuries by reason of the fact that the defendant negligently, carelessly and wrongfully failed to provide good and sufficient fire to properly warm the car in which the plaintiff was a passenger, thereby causing plaintiff to contract a severe cold.

The answer of defendant to the first count of the petition is a general denial and the further allegation that the injuries to plaintiff, if any she received, were

the result of an unavoidable accident, which the exercise of reasonable skill, diligence and care would not have prevented. The answer to the second count of the petition is a general denial. The new matter set up in defendant's answer was denied in plaintiff's reply.

It appeared in evidence on the trial that the plaintiff was accompanying one D. A. Fults, from Sedalia to Kansas City, and, at the time of the accident, that they were riding over defendant's road upon a free pass, which, together with condition indorsed, was in words and figures following:

THE MISSOURI PACIFIC RAILWAY CO.,

Employe's trip pass.

NO. H. 2062.

January 20, 1885.

- - - Pass - - -

D. A. Fults and Lady,

- - - from - - -

SEDALIA TO KANSAS CITY

Over the Missouri Pacific Ry.

Account of

OPERATOR AND CLERK.

Void unless used on or before January 25, 1885. Not valid unless countersigned by

B. F. PHELPS.     H. M. HOXIE,
                    Third Vice-President.

Countersigned B. F. Phelps.

Expires December 31st, 1885, unless otherwise ordered.

Indorsement on back as follows:

Form H.

This pass is not transferable.

The person accepting it assumes all risks of accidents and damages without claim upon the company.

Forfeited if presented by other than the person named.

That, at a point between Sedalia and Kansas City, the car in which the plaintiff was seated, on account of a broken rail, was derailed and thrown down an embankment, in consequence of which she received the injuries complained of in the first count of her petition, the nature of which was testified to by herself and other witnesses.

That after the receipt of the injuries occasioned by this accident a car in which the plaintiff was seated was not sufficiently warmed, which caused plaintiff to contract the cold and injury complained of in the second count of her petition.

At the close of the plaintiff's evidence, the court refused to give an instruction asked by defendant, in the nature of a demurrer to the evidence, and, on behalf of plaintiff, in substance instructed the jury that it was the duty of the defendant to have done all that human care, vigilance, skill, ingenuity and foresight could have devised, consistent with the mode of conveyance and the practical operation of their road in providing safe coaches and machinery, track and roadway, and in keeping the same in repair.

Among others the court gave the following instruction on part of the plaintiff:

"Even though the jury may believe from the evidence that plaintiff did not pay her fare for riding on said train, but was a gratuitous passenger, still the jury are instructed that such fact does not affect the issues in this case, and is no defense."

The court refused two instructions asked for by defendant to the effect that if the defendant exercised reasonable care and diligence in keeping its road and track in good order, the finding should be for the defendant.

The theory of defendant's counsel, in the trial below, was, and their argument in this court is, that the plaintiff, being only a gratuitous passenger, riding on a free pass containing the stipulation indorsed thereon, to assume all risks of accidents and damages without claim upon the company, the defendant was only required to exercise *ordinary* care in transporting her, and was not compelled to exercise that *extraordinary* care and skill required of common carriers in transporting passengers for hire. The conflict between this position and the instructions given by the trial court as hereinbefore indicated and quoted, presents the only question for our consideration.

This question is by no means free from embarrassment, and so far as we have been able to discover, has never been directly passed upon by the supreme or appellate courts of this state. The nearest approach to it was in the case of *Carroll v. Railroad*, 88 Mo. 239, where it was held that a drover transported over a railroad on a pass for the purpose of taking care of his stock on the train, was a passenger for hire and the railroad company could not stipulate for exemption from liabilities to him caused by its negligence; and in the case of *Lemon v. Chanslor*, 68 Mo. 340, where it was decided that a gratuitous passenger, who received injuries while riding in defendant's hack, might maintain a suit for damages caused by the carrier's negligence. These cases differ from the one before us in that the former contained an element of consideration received by the railroad company, and that the latter contained no stipulation or agreement on part of the plaintiff to exonerate the defendant from liability as a common carrier.

The plaintiff here was not merely a gratuitous passenger, *i. e.*, a passenger carried without payment of fare or other consideration, but she was a passenger upon

a free pass, expressly conditioned that the person accepting it assumed all risks of accident and damages without claim upon the company.    Does this fact distinguish her case from that of a passenger for hire, or from that of a merely gratuitous passenger? It may be a matter of some interest, if not of profit, to note the different results reached by courts of last resort, which have passed upon this question, together with some of the stated reasons which have led them in different directions.

The case of *Griswold v. Railroad*, 53 Conn. 371, was in all respects similiar to this.    The plaintiff's intestate, a boy sixteen years old, was, at the time he received the injuries which caused his death, riding on a free pass which provided that the person accepting it assumed all risks of accident, and expressly stipulated that the company should not be liable under any circumstances, whether of negligence of their agents or otherwise, for any personal injury.    This being interposed by the company in defense, that court held the defense good and the company not liable for any degree of negligence. In reaching this conclusion the court reasoned as follows : "Where a master uses due diligence in the selection of competent servants, and furnishes them with suitable means and machinery to perform the service in which he employs them, he is not answerable to one of them for an injury received in consequence of the negligence of a fellow-servant, while both are engaged in the same service.    Here the rule of *respondeat superior* is waived, and it is generally put on the ground of implied contract, and if a waiver may be implied in such a case, why not give effect to an express agreement in the case of a free passenger?" And as a reason for holding such a stipulation good against all degrees of negligence the court said : "The foregoing reasoning, as it seems to us, will also furnish a complete answer to the claim that the defendant must be held liable on account of the gross negligence of its servants, for it is manifest that the principal is no more culpable in the one case than in

the other, and the rule of *respondeat superior* being waived, the protection is complete. The word 'negligence' in the stipulation from exemption is used in its generic sense and comprehends all degrees. And we may add that some high modern authorities have expressed strong disapprobation of any attempt to fix degrees of diligence or negligence, because the distinction is too artificial and vague for clear definition or practical application." It may reasonably be inferred from the reasoning of that case, that it were against public policy for a corporation engaged as a common carrier, to stipulate against acts of negligence on the part of the corporation itself, and that such agreements are only valid when they relieve the company from the imputed negligence of its servants, and that such company might be liable, notwithstanding such an agreement, if injury resulted from neglect of the company to employ competent servants or to use safe machinery. This system of reasoning characterizes the following cases cited by the learned counsel for appellant: *Hall v. Railroad*, L. R. 10 Q. B. 437; *Wells v. Railroad*, 26 Barb. 641; *Wells v. Railroad*, 24 N. Y. 181; *Bissell v. Railroad*, 25 N. Y. 442; *Maguire v. Dunsmore*, 56 N. Y. 168; *Henning v. Railroad*, 34 N. J. Law, 513, and other cases not cited as follows: *Poucher v. Railroad*, 49 N. Y. 263; *Dorr v. Steam Nav. Co.*, 11 N. Y. 485; *Kinney v. Railroad*, 32 N. J. Law, 409.

The case of *Annes, Adm'x, v. Railroad*, 67 Wis. 46, was also similar to the one at bar. The plaintiff's intestate, at the time he received the injuries which caused his death, was riding on a free pass with a stipulation indorsed upon it exempting the company from all liability, under any circumstances, from negligence of the company, their agents or otherwise. The accident and consequent injury in that case were occasioned by the running of one train into the rear end of another train which was stalled in the snow upon defendant's track. The court, after an extensive review of authorities, decided that the contract or stipulation on the back of

the free pass relieved the company from liability for damage resulting from the want of *ordinary* care of the defendant's servants, unless such negligence was expressly made a crime, but that such stipulations would not relieve the company from damages resulting from the *gross* carelessness of the defendant's agents and servants. This decision seems to be pivoted upon a distinction between "ordinary" negligence and "gross" negligence, the lack of "ordinary" care and the lack of "extraordinary" care. To reach this conclusion, that court examined and expressly repudiated the reasoning and argument adopted by the court in *Griswold v. Railroad, supra*, and similar cases, and expressed its views as follows: "We can see no good reason why the person who seeks a gratuitous carriage from a railroad company should stand in the same position to the carrier as the person who pays for his transportation, and therefore forces the carrier to assume all duties of such carrier. The carrier is in no case under obligation of law to carry a person gratuitously, as he is when he is tendered his proper compensation, and he does not, therefore, owe the same duty to the person carried gratuitously that he does to the person who pays for his carriage, unless he chooses to accept such duty by not stipulating against assuming it. Nor does it appear to us to be contrary to public policy or to good morals for the carrier to stipulate with the person who desires a gratuitous transportation that he shall assume the *ordinary* risks of accident which may occur through the want of ordinary care on the part of the servants of the company. So long as the carrier does not attempt to excuse himself from that recklessness of his servants which is dangerous to life, or is punishable by law, or is inconsistent with good morals, it does not seem to us that he is violating any rule of law, or that he is acting against public policy." The italics in this quotation are my own. It is apparent from this argument that the court was endeavoring to differentiate between "gross" negligence and "ordinary" negligence. It further says: "We think that a railroad company,

when carrying a passenger gratuitously, is in a condition analogous to the bailee for the sole benefit of the bailor, as is generally instanced, the case of a person storing goods of another on his premises without compensation, and in such case it has always been held that the bailor shall only be liable for their loss or damage when he is guilty of 'gross' neglect." If this conclusion is a sound one, then we confess that we are unable to see the necessity of requiring the gratuitous passenger to accept or sign a contract in order to relieve a common carrier from liability for ordinary carelessness or neglect. Yet it has been frequently decided that a gratuitous passenger bears the same relation to and is entitled to the same protection from his common carrier that he would were he a passenger for hire. *Lemon v. Chanslor, supra ; Railroad v. Derby*, 14 How. 486 ; *Steamboat v. King*, 16 How. 469 ; *Abell v. Railroad*, 19 Md. 494.

Decisions similar to that of *Annes v. Railroad, supra*, have been rendered in the following cases : *Wright v. Goff*, 6 Ind. 416 ; *Railroad v. Remmy*, 13 Ind. 518 ; *Railroad v. Mundy*, 21 Ind. 48 ; *Thayer v. Railroad*, 22 Ind. 26 ; *Railroad v. Read*, 37 Ill. 484, and other early cases, which we deem it unnecessary to cite.

The case of *Jacobus v. Railroad*, 20 Minn. 125, is a case in every respect like the one at bar, and the two hereinbefore discussed. The court in that case held that the defendant was bound to exercise the same degree of care for a gratuitous passenger as would be required in the case of a passenger paying fare, and should be held to the same liability, and that the condition indorsed upon the pass did not absolve the defendant from any degree of that liability. The court argued as follows : "There are two distinct considerations upon which the stringent rule as to the duty and liability of carriers of passengers rests. One is the safety of the passenger on his own account, and the other is regard for his safety as a citizen of the state. The latter is a

consideration of public policy growing out of the interest which the state or government as *parens patriæ* has in protecting the lives and limbs of its subjects. So far as the consideration of public policy is concerned, it cannot be overridden by any stipulation of the parties to the contract of passenger carriage, since it is *paramount* from its nature. No stipulation of the parties in disregard of it, or involving its sacrifice in any degree, can be permitted to stand. Whether the case be one of a passenger for hire, a merely gratuitous passenger, or of a passenger upon a conditioned free pass, as in this instance, the interest of the state in the safety of the citizen is obviously the same. The more stringent the rule as to the duty and liability of the carrier, and the more rigidly it is enforced, the greater will be the care exercised, and the more approximately perfect the safety of the passengers. * * * We can conceive of no reason why these propositions are not equally applicable to passengers of either of the kinds above mentioned." This case also holds that in such cases there is no distinction between *negligence* and *gross* negligence.

The doctrine in the *Jacobus case* is in harmony with that declared in the following cases: *Railroad v. Heaton*, 37 Ind. 448; *Railroad v. Selby*, 47 Ind. 471 (which cases expressly overruled the earlier Indiana cases hereinbefore cited); *Goldey v. Railroad*, 6 Casey, 242; *Railroad v. Henderson*, 1 P. F. Smith, 315; *Railroad v. Butler*, 57 Pa. St. 335; *Railroad v. Hopkins*, 41 Ala. 486. We have said sufficient to show how irreconcilable is the conflict between the decisions of courts of high authority concerning this question.

Counsel for appellant are conservative enough to assume the middle ground and only ask us to relieve the defendant from such liability as may have attached to a failure upon its part to exercise ordinary care. In other words, to draw a distinction between "gross" negligence and "ordinary" negligence. It seems to be conceded that plaintiff was a passenger and that the relation of common carrier and passenger did exist

BRYAN V. MO. PAC. RY. CO.    239

between the defendant and plaintiff. The stipulation endorsed upon the pass is broad enough in its terms to wholly relieve the company from all damages, however incurred, if it does not conflict with public policy.

The duty which a common carrier owes to a passenger is thus defined by WAGNER, J. : "They are not, as in the case of carriers of goods, insurers and responsible for all damages which do not fall within the excepted cases of the acts of God and the public enemy, but they are bound to the utmost care and skill in the performance of their duty. The degree of responsibility, therefore, to which carriers of passengers are subjected, is not ordinary care which will make them liable only for ordinary neglect, but extraordinary care, which renders them liable for slight neglect. Public policy and safety require that they should be held to the greatest possible care and diligence, and that the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents." *Huelsenkamp v. Railroad*, 37 Mo. 538.

Whatever the form of expression has been, the care and circumspection required of carriers of passengers, especially by rail, have been the utmost which could be exercised, under all the circumstances, short of the warranty of the safety of the passengers. Hutchinson on Carriers, sec. 502. And it is well settled in this state, whatever may be the rulings elsewhere, that any negligence in such cases is gross negligence—or to state it differently, there are no degrees of negligence in such cases, where the passenger is without fault, as in this case. *McPheters v. Railroad*, 45 Mo. 26 ; *Lemon v. Chanslor, supra ; Railroad v. Horst*, 93 U. S. 281 ; *Steamboat v. King*, 16 How. 469 ; *Railroad v. Lockwood*, 17 Wall. 357.

The law attached this responsibility to the employment of defendant; when it assumed the calling it had no power over the duties which the law annexes to that calling. To permit it, in this instance, to maintain its relation to plaintiff as a common carrier and yet to

shield itself from the consequences of its own negligence by a contract would be a departure from the law and from a long line of decisions in this state, where it has been held that while a common carrier, of goods, may limit his common-law liability by a special contract, he being an insurer at common law, he cannot exempt himself from the consequences of his own negligence. *Ball v. Railroad*, 85 Mo. 580, and cases cited. The negligence if any in this case was the failure upon the part of defendant to perform a duty—such negligence is not a proper subject-matter of contract. If the injuries received by plaintiff were the result of an accident in no manner occasioned by the negligence of defendant, then the defendant would not be liable, with or without a contract exempting it from liability.

As a result of our investigations we are of the opinion that the trial court properly instructed the jury, that the pass read in evidence was no defense.

Its judgment is, therefore, affirmed. HALL, J., concurs.