———: ——: verdict: evidence.

W. E. PARKER, Respondent, v. THE METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 1, 1897.

1. **Negligence**: STREET RAILWAY: EVIDENCE: CARE. The evidence herein is abundant to sustain plaintiff's case since street railways, like ordinary railroads, owe their passengers more than ordinary care for safe carriage and are held to the very highest degree of care of a very prudent person.

2. **Evidence**: OPINION. The witness in this case was properly allowed to testify that there was nothing to prevent the gripman from seeing a hose wagon approaching on the cross street; and such testimony is not subject to the objection that it is mere opinion.

3. ———: DISTANCE OF STOPPING TRAIN: OPINION. That a nonexpert witness testified that a street car train could stop from within eight to twenty feet will not be fatal error where the gripman testifies that he stopped the train within fifteen feet, especially where such fact bears but slightly upon the merits.

4. **Negligence:** CARE: INSTRUCTIONS. The only fault of instructions in this case is in not requiring the proper degree of care of defendant's servants.

5. ———: ———: ———. An instruction which relieves a street car company from liability, if the gripman did not in fact see or hear warnings given, is properly refused since the company is responsible for what the gripman could have seen or heard if he had exercised proper care.

*Appeal from the Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*Pratt, Dana & Black* for appellant.

(1) Defendant's peremptory instruction for the jury to return a verdict for defendant should have been given. (2) The court committed error in allowing a witness to give his opinion as to whether there was anything to prevent defendant's gripman from seeing the hose cart when the car got to the first corner of Eleventh street. *Kennedy v. R'y*, 43 Mo. App. 1; Booth on Street Railways, section 306. (3) The witness, Howard Hill, was not properly qualified as an expert in the case, and his testimony in regard to the distance in which the train could be stopped should not have been admitted. *Hoffman v. R'y*, 51 Mo. App. 278; *Hammerberg v. R'y*, 62 Mo. App. 563; *Senn v. R'y*, 108 Mo. 150. (4) Instruction number 2 given for plaintiff was erroneous for the reasons, *first*, that there was no proper testimony before the jury to show in what distance the train could have been stopped, and, *second*, there was nothing in the evidence to show what skill and

care was necessary for the trainmen to stop the same with safety to themselves, the train, and those on the train. *Igo v. R'y*, 38 Mo. App. 381. (5) The court erred in refusing instruction number 4 asked by defendant. (6) The verdict was grossly excessive.

*A. A. Whitsitt, Hamner & Hamner* for respondent.

(1) Appellant's first point—that the court should have sustained a demurrer—that this was a mere accident, or was caused by the hose wagon being on the wrong side of the street, is ridiculous. The court submitted to the jury whether this was a mere accident or not, by giving appellant's second instruction. *White v. R'y*, 31 Mo. App. 57, and cases therein cited. See, also, *O'Flaherty v. R'y*, 45 Mo. 71. (2) Appellant secondly complains of the court's allowing a witness to testify whether there was anything to prevent the gripman from seeing the hose cart when the car got to the corner of Eleventh street, on the ground that it is an opinion and cites 43 Mo. App. 1, which nowhere in it says anything about the opinion of anybody and is entirely inapplicable, and then under point 3 cites *Hoffman v. Itself*, 51 Mo. App. 278, where the court decides exactly opposite its present contention, on an exactly similar question (top of page 277). (3) Appellant thirdly complains that Hill was not qualified as an expert. (4) This instruction number 4 asked the court to say that if the negligence of the gripman in not seeing or hearing the signs and the hose cart, caused the accident, then appellant can not recover. In other words, that if appellant was negligent, then respondent could not recover. *Sharp v. R'y*, 114 Mo. 103; *Fiedler v. R'y*, 107 Mo. 645; *Guenther v. R'y*, 108 Mo. 18; *Lynch v. R'y*, 111 Mo. 607.

GILL, J.—On the sixth day of June, 1894, the plaintiff, while a passenger on one of defendant's street cars, was injured in a collision occurring at Eleventh and Main streets, Kansas City, between said car and one of the hose wagons belonging to the city fire department. In a suit for damages, the plaintiff charged that the injuries resulted from the carelessness of defendant's employees in handling the train. At the trial the plaintiff had a verdict and judgment for $2,125, and defendant appealed.

I. We shall notice the matters complained of in the order set out in defendant's brief. The first and principal contention is that the trial court erred in refusing to peremptorily instruct the jury to find for the defendant. In determining this question, we have, as is our duty, carefully read and considered the entire evidence brought out on the trial; and in so doing find abundant evidence to sustain plaintiff's case.

NEGLIGENCE: street railway: evidence: care.

The facts disclosed by plaintiff's evidence are as follows: About 7:30 P. M., of June 6, 1894, plaintiff took passage on one of defendant's cable trains, to go from his home in the southeastern portion of the city to the Union Depot. He and his little boy occupied the second seat from the front of the grip car on the right side, so that in traveling north on Main street plaintiff was on the east side of the car. The train consisted of three cars, the grip and two coaches. When arriving at Twelfth street (going north) the gripman dropped the cable, as was usual at that point, and brought the train to a standstill at the north side of Twelfth street, where other passengers were taken on by transfer from the cable line running east and west at that place. Here plaintiff and several others on the same car testified that they heard the fire-alarm bell

FACTS.

ringing at the central or main station three blocks north and one block east. The grade of Main street north of Twelfth street to Eleventh (which is about four hundred feet) is on a slight decline, about two feet to the hundred; and down this light grade the cable is not used by gripmen, the cars being allowed to drop down from Twelfth street north to Eleventh street by mere force of gravitation. So it was the evening in question; the gripman loosened his brakes, and the train moved slowly to the north. The plaintiff and several of his witnesses testified that as they passed north on the car, they heard the sounding of the gong on the hose wagon, coming south on Walnut street (which is the first street east and parallel with Main) to Eleventh and west on this street toward Main. According to the testimony of these witnesses also, it was apparent, while the cable train was moving north, that the hose wagon was coming at a rapid speed west on Eleventh street, from Walnut toward Main. This evidence also shows that as the cable train moved toward Eleventh street, and when it was yet one hundred to one hundred and fifty feet away, several parties at the crossing of Eleventh and Main saw the danger of probable collision and began yelling, waiving hands, and one man went into the street and motioned his hat, clearly for the purpose of stopping the cable train and thereby to avoid the threatened collision. While this was going on, the conductor of the train stood in the passage way of the grip car, but, it seems, with his back to the front; the gripman stood at his post in the middle of the car, but took no heed of these warnings. The train was permitted to move along until it reached the corner of Eleventh street, where the hose wagon, driven west at a rapid rate, dashed into the grip car, killing one of the horses and seriously injuring the plaintiff. The grip

car was brought to a stop somewhere between the middle and north lines of East Eleventh street.

At the time of this collision the city ordinances of Kansas City provided that all steam engines, hose carts or wagons, and other apparatus belonging to the fire department, should have the paramount right of way over all streets, etc., when going to a fire, but required that they should keep the right side of the street, except where the same was obstructed. It was also provided by ordinance that when such engines or apparatus, going to a fire or answering an alarm, shall come up with or approach any street car, then the party in control or in charge of the street car or train shall cause the same to come to a full stop and so remain until such apparatus of the fire department has fully passed or come to a stop. On the evening in question the fire department was responding to a fire alarm west and south of its central station, and when going west on Eleventh to Main street, this hose wagon kept to the . north side of the street, until it approached Main street, but there a buggy, with a lady driver, confronted the firemen, and the hose wagon was pulled over to the south side. Going at the rapid speed it was then being driven, it would have been difficult to pass south on Main between the cable tracks and the curb line on the east side of Main street, because there was there only a space of twelve to fourteen feet.

Under this state of facts, with what show of reason can it be contended that the gripman and conductor in charge of the cable train in question were free from fault or negligence? If the facts were as above stated (and we are bound to so assume, because the jury has so found on evidence abundant for that purpose), then clearly defendant's employees were, under the circumstances, quite negligent in managing the train. Street car companies, like ordinary railroad corporations, owe

to their passengers more than ordinary care for safe carriage; they are bound to exercise a very high degree of care, or, as declared by our supreme court, "the very highest degree of care of a very prudent person." *O'Connell v. R'y*, 106 Mo. 482. The trial court, however, did not, by its instructions, impose this very high degree of care on the defendant's employees, as it might have done, but only exacted *ordinary* care. The jury, at plaintiff's request, was told that if it was found from the evidence, "that prior to said train reaching Eleventh street defendant's servants and agents managing and controlling said train, discovered or knew of the approach of the hose wagon and team coming down Eleventh street into Main street, or by the exercise of ordinary care might have known of the approach of said hose wagon and team so coming, and could thereafter, by the exercise of ordinary care and skill, with safety to themselves, the train, and those on the train, have stopped the same and prevented said collision and averted the injuries to plaintiff, then the verdict should be for the plaintiff." And further, the court of its own motion instructed that, "if the jury believe from the evidence that the gripman in charge of defendant's train was not aware of the approach of said hose cart or wagon, and could not by the exercise of ordinary care have been aware of its approach, until it was too late to avoid the collision complained of, then your verdict must be for defendant." Ordinary care was also correctly defined as such care as an ordinarily prudent person would exercise under similar circumstances.

But the jury found, as they might well have done under the evidence, that the gripman did not, at the time, perform his duties with the care of even an ordinarily prudent man. If the testimony of plaintiff and his several witnesses is to be credited, the gripman's

conduct fell far short of what, under the circumstances, might be expected of an ordinarily prudent and careful man. If he had been at the time reasonably diligent and attentive, he could but have discovered that he was carrying his passengers into a position of great danger. Pedestrians one hundred to one hundred and fifty feet in front of the train, and at the corner of Eleventh street, saw the probabilities of a collision, if the train was permitted to move along in that direction, and by repeated hallooing and signalling made efforts to stop it. These warnings and demonstrations were given in ample time to have brought the train to a stop fifty to seventy-five feet before reaching the point of danger. It is useless to answer that the gripman did not *see* these signals—did not hear the yelling of the bystanders, or the continuous sounding of the firemen's gong, as the hose wagon came dashing down from the east on Eleventh street; it was his imperative duty to look ahead and pay attention to such warnings. Though late in the afternoon, all agree that it was bright and light, so that all could see without the aid of street lamps, or other artificial appliances. Defendant's employees will not be allowed to close their eyes and ears and carry their loads of "living freight" into situations of such obvious peril. The cable company will be responsible for all such damages—not only in cases where its employees *saw* the impending danger in time to avoid it, but as well where, by the exercise of proper care, they *might have* discovered it in time.

II. It is next objected that the court erred in permitting a witness, who occupied the grip car, to testify as to whether or not "there was anything to prevent the gripman on this car from seeing this hose wagon and these white horses coming down Eleventh street, when the car got to the first corner of Eleventh." Counsel say that the

EVIDENCE: opinion.

witness was asked for a mere *opinion*, that he ought merely to have detailed the facts and left the matter of opinion to the jury.   We do not think the statement of the witness comes within the rule invoked.   Counsel admit that it would be proper for a witness to testify as to whether or not there was any obstacle in the way, or anything to obstruct the view of the gripman.   As we read the question and answer, this, in substance, was about all the witness testified to.   At all events, it is a matter of small importance, furnishing no substantial grounds for reversing the judgment.

A like answer may be made to the objection to the testimony given by the witness Hill, in relation to the distance in which the train could have been stopped. He gave it as his opinion that the train could, under ordinary circumstances, have been stopped in the distance of eight to twenty feet.   Admitting that Hill was not qualified as an expert to give an intelligent opinion as to the distance required to stop the train in question, at that particular place, and yet it is clear that the opinion given by him did the defendant no harm.   The grip-man in charge of the train, called as a witness by defendant, himself testified that he did stop the train in the space of about fifteen feet.   But in fact the distance required to bring the train to a standstill had little to do with the merits of the case.   The culpable negligence committed by this gripman was in failing to stop the train before it arrived at the corner of Eleventh and Main streets.   He had timely warning, as already stated, to stop the train many feet before getting to that point of danger.

——: distance of stopping train: opinion.

The criticisms as to instructions given at plaintiff's request are wholly without merit.   We have already written all that is necessary to be stated in regard

to these instructions. The only fault we have discovered is the one already alluded to, that of not requiring that degree of care from defendant's servants which the law imposes. In these damage cases, we seldom find so concise and and yet so clear a declaration of the law pertinent to the issues as was asked by plaintiff's counsel in this case and given by the court.

*NEGLIGENCE: care: instructions:*

Neither was it error to refuse defendant's fourth instruction. It declared: "That if the hose cart or wagon was on the south side of east Eleventh street, as it approached Main, and that said gripman in charge of defendant's train neither saw, nor learned of the approach of the cart or wagon until it was too late to avoid the accident complained of, then your verdict must be for defendant, notwithstanding you may also believe that fire alarms and warnings were given and heard by others upon and near said train, and that some of the passengers left the train in anticipation of danger before the accident." It will be seen that this instruction would relieve the defendant, *if the gripman did not in fact see or hear* the warnings given; whereas, as already stated, the company is responsible for what the gripman may have seen or heard if he had exercised the proper care and attention to his business.

—: —: —.

It is unnecessary to further extend this opinion with any discussion of the objection to the amount of damages awarded by the jury. It is clear that they are not excessive. Judgment affirmed. All concur.