SWEENEY v. KANSAS CITY CABLE RAILWAY COMPANY, Appellant.

Division Two, June 6, 1899.

150 385
87a 435
150 385
90a 130
150 385
92a 128

1. **Railroad**: DUTY OF CARRIER: INJURY: BURDEN. The implied contract which a common carrier owes to a passenger is to carry him safely, and if the passenger be injured by the carrier while the relation of carrier and passenger exists, the burden is upon the carrier to show that the injury was not occasioned by its negligence. And the greatest care is required of the carrier to avoid the injury.

2. ———: ———: OBSTRUCTION ON TRACK. When a gripman, in charge of a cable car, sees a broken down wagon on the street car track, such gripman can not assume, until something appears to the contrary, that such wagon will move out of the way of the approaching car.

3. ———: ———: ———: DUTY OF GRIPMAN. It is the duty of a gripman in charge of a cable car to keep a lookout along the track in front for persons and obstructions; and if by such attention he could have discovered either, or have heard or seen one in front on the track who tried to warn him of an obstruction, in time to stop the cars, but did not, the road is liable for whatever injury his negligence caused.

4. ———: ———: ———: ———: PRESUMPTION. If he could have seen the wagon on the track in time to stop the cars had he looked, the presumption is that he did not look, or, if he did look that he did not heed what he saw. In either case he was negligent.

5. ———: ———: ———: CONTRIBUTORY NEGLIGENCE: ON RUNNING BOARD. The passenger (plaintiff's husband) stated to the gripman that he wished to get off at 20th street, and as the car approached that street he got out on the running-board, as was customary, so as to be ready to get off when the car stopped. But the gripman for some reason did not stop the cars there, and when his attention was called to the matter by another passenger stated he had not heard

plaintiff's husband and would let him off at the next street. He continued to stand on the running board, but before the cars reached that street the car ran into a broken down wagon on the track, and his leg was broken, and he died the next day after it had been amputated. The evidence was that the gripman could have seen the wagon had he been looking in time to have stopped the cars before the collision, and that the owner of the wagon ran up the track and warned him of the danger which he failed to heed. *Held*, first, that there was ample evidence tending to show the road's negligence, to take the case to the jury; and, second, that, as the passenger had got on the running-board for the purpose of getting off the car, and had not voluntarily assumed that position, he was not guilty of contributory negligence in being on the running-board at the time of the accident, even though the evidence showed that other passengers standing thereon jumped back into the car and escaped injury. There was no evidence that the passenger saw the wagon, and even if he did he had a right to assume that he would be carried safely.

6. **Evidence:** FORMER TESTIMONY: CONTRADICTORY OPINION. It was not proper to ask a witness if on a former occasion he has not testified that he thought the gripman did all he could to stop the train, where the purpose of the question was to contradict the witness. Previous expression of opinions are not competent for such a purpose.

7. **Railroad:** CARE REQUIRED. Street railways are required to exercise toward their passengers the utmost care and diligence of very cautious-persons.

8. ——: NEGLIGENCE: DEFINITION. It is not necessary to define the word "negligence" in an instruction.

9. **Assumption in Instruction.** The assumption in an instruction of an issuable fact conceded by the other party, is not erroneous.

## *Appeal from Pettis Circuit Court.*—HON. G. F. LONGAN, Judge.

AFFIRMED.

CHARLES E. YEATER, KARNES, HOLMES & KRAUTHOFF and FRANK HAGERMAN for appellant.

(1) If there was any negligence on defendant's part, Sweeney must be charged with default in the same respect. There was the right to assume that the wagon would move out of the way until something appeared showing that the

wagon could not move. Sinclair v. Railroad, 133 Mo. 241; Boyd v. Railroad, 105 Mo. 281; Bunyan v. Railroad, 127 Mo. 17. (2) It was error to exclude the testimony of John H. Twyman. Whether the gripman acted promptly upon the appearance of danger was a vital question in the case. Even as to an injured passenger, being confronted by a sudden danger, a failure to exercise the best judgment was not negligence. Winn v. Railroad, 30 N. E. 721. The right to prove contradictory statements always exists, and the ruling before was probably put upon the ground of stating a conclusion. The contradictory testimony that is offered need not be precisely converse to what is testified to at the trial, nor that which was admissible as original testimony. The courts even permit acts contradictory to the testimony given, to be shown for the purpose of impeachment. 1 Greenl. on Evid. [14 Ed.], sec. 462; Spohn v. Railroad, 101 Mo. 417; Joseph v. Furnish, 41 Pac. 424. (3) It is elemetary that parties are confined to the charge of negligence made in the petition, and any enlargement thereof by the instructions is reversible error. Waldhier v. Railroad, 71 Mo. 514; Price v. Railroad, 72 Mo. 414; Hite v. Railroad, 130 Mo. 132; McManamee v. Railroad, 135 Mo. 440; Bunyan v. Railroad, 127 Mo. 19. (4) The degree of care exacted was too strict. The care required was "the highest practical degree of care of a very prudent person engaged in like business," and defendant was liable if its servants "were guilty of even slight negligence." Hurt v. Railroad, 94 Mo. 263; Dougherty v. Railroad, 97 Mo. 647; Smith v. Railroad, 108 Mo. 249; Jackson v. Railroad, 118 Mo. 224; Schaefer v. Railroad, 128 Mo. 70; Sullivan v. Railroad, 133 Mo. 6; Vannatta v. Railroad, 133 Mo. 22; Thompson v. Railroad, 140 Mo. 137; Bischoff v. Railroad, 121 Mo. 226. (4) The instruction, to the ordinary mind of jurors, did not define negligence. After setting out the care required, there was no statement that a failure in that respect constituted negligence, but the instruc-

tion, as an independent proposition, wound up with the statement that if defendant was "guilty of even slight negligence" there was liability. Moore v. Railroad, 126 Mo. 265; Yarnell v. Railroad, 75 Mo. 583; Goodwin v. Railroad, 75 Mo. 75; Sherwood v. Railroad, 132 Mo. 344; Ravenscraft v. Railroad, 27 Mo. App. 623. (5) The instruction submitted to the jury, as a question of fact, whether Sweeney was in the exercise of ordinary care, whereas, as a matter of law, he was not.

JOHN CASHMAN and ROZZELLE & WALSH for respondent.

(1) Defendant permitted passengers to occupy the foot or running-board, and it was not forbidden by any officer of the company or a violation of any rules of the company; and this did not depend upon the crowded condition of the car. (2) Deceased was in a place of danger by reason of negligence of defendant. (3) It is not negligence *per se* to stand on platform or running-board, though there be seats inside, in the absence of rules of the company against it. Burns v. Railroad, 50 Mo. 139 Willmott v. Railroad, 106 Mo. 544; Seymour v. Railroad, 114 Mo. 271; Gerstle v. Railroad, 23 Mo. App. 361. (4) It was the duty of defendant to exercise the highest degree of care of a very prudent person to carry Sweeney safely, while the deceased was only required to exercise ordinary care. (5) John H. Twyman was a witness for plaintiff. His business was that of wholesale cigars and tobacco. He was never in any way connected with railroads of any kind. He was not introduced as an expert. The question was properly excluded. It was an attempt to contradict the witness as to a fact elicited from him on cross-examination by an alleged conclusion or opinion of the witness expressed on a former occasion. State v. Miller, 44 Mo. App. 165; Winter v. Railroad, 39 Mo. 468; King v. Railroad, 98 Mo. 235; McFadin v. Catron, 120 Mo. 263; Lane v. Bryant, 9 Gray 246; Hubbell v. Bissell, 2 Allen 196.

(6) Plaintiff's instructions were a correct exposition of the law and in accord with the decisions of this court. Hall v. Hall, 107 Mo. 1; Storck v. Mesker, 55 Mo. App. 26. The degree of care required of carriers of passengers as used in plaintiff's instructions, has been repeatedly approved by the decisions of this court, and this court has repeatedly said that if the trial courts would adopt the substance of such instructions, reversals would be prevented. Huelsenkamp v. Railroad, 37 Mo. 546; Bryan v. Railroad, 32 Mo. App. 239; O'Connell v. Railroad, 106 Mo. 484; Smith v. Railroad, 108 Mo. 249; Bischoff v. Railroad, 121 Mo. 220.

BURGESS, J.—This suit was begun by plaintiff in the circuit court of Jackson county against the defendant, a street railway company, for damages in the sum of $5,000 for negligently killing her husband, Patrick Sweeney. Upon the application of plaintiff the venue of the cause was changed to the circuit court of Pettis county where a trial was had before a jury, resulting in a verdict in favor of plaintiff in the sum of $5,000, for which judgment was rendered in accordance therewith. After unsuccessful motion for a new trial defendant appeals.

At the time of the accident defendant operated a double track cable street railway upon Summit street in Kansas City, Missouri. There was a space of four and one-half feet between the two tracks. The train upon which deceased was riding as a passenger at the time of his injury was made up of an open gripcar and a closed coach coupled to it, each twenty-two or twenty-three feet long, and weighing about 6,500 pounds each.

The train was operated by a grip, which was attached to a moving cable rope and was manipulated by a gripman. The rope moved at near twelve miles per hour. Summit street runs north and south. Southbound cars run on the west track, and northbound cars on the east track. At the

place where the accident occurred the fall of the grade is about ten feet in every hundred. The accident occurred a few minutes after six o'clock on the evening of October 29, 1894, while the train was going south. To the front of the train was attached a headlight which according to the testimony adduced by plaintiff, on a dark night without a fog, cast its rays from one hundred to one hundred and thirty feet in front, and according to defendant's testimony, on a misty, foggy night cast its rays in front from twenty to sixty feet. At the time of the accident there were only seven or eight passengers in the coach, while its seating capacity was twenty-four, besides there were vacant seats in the gripcar. Sweeney desired to leave the car at Twentieth street, and when near that point so stated to the gripman, and stepped out upon the running-board upon which it was customary for passengers to ride to be in readiness to leave the car when it stopped. There were three persons on the board when Sweeney stepped out on it. It seems that the gripman who was at the time engaged in conversation with a policeman did not hear Sweeney and carried him past his place of destination and when asked by a passenger why he did not let the old gentleman off at Twentieth street replied in effect that he did not hear him, and that he would stop at Twenty-first street which was the next street south. In the meantime Sweeney remained standing on the running-board so as to be ready to get off the car at the next street, being Twenty-first street. About this time a coal wagon had broken down on or close to the track of defendant at a point about three hundred feet south of Twentieth street, the rear end of which extended over the east rail of the track upon which the car was proceeding southward. The testimony of several witnesses tended to show that the gripman could have seen the broken down wagon on the track, or its close proximity thereto from fifty to one hundred and twenty feet. That the train was

running at full speed and that no effort was made to stop, until about the time of the collision.

The driver of the coal wagon, Colton, and a negro woman, Emma Pullman, to whom the coal was to be delivered with which the wagon was loaded, testified that Colton ran up the tracks fifty or sixty feet to warn the gripman, but that he paid no attention to it. The gripman, however, denied that he either saw or heard Colton when he was trying to attract his attention. The track was at the time what a witness called a "clean wet track." The evidence, as is usual in such circumstances, was conflicting with respect to the disance in which the train could have been stopped under the then existing conditions, some saying within forty feet, others in not less than seventy-five to one hundred feet.

There was evidence tending to show that at the time of the accident the gripman was not looking down the track in front of the cars, but was talking to a passenger and looking in a different direction.

Before the car struck the wagon upon the track, two passengers who stood in front of Sweeney upon the running-board, jumped into the seat space in the car, but Sweeney, the deceased, received a blow which crushed his left leg at the knee. The injury made amputation necessary, and he died upon the morning of the 30th of October from the hemorrhage incident to the operation. Another man standing behind Sweeney upon the running-board was also knocked off and injured, but not seriously.

When the car struck the wagon it was going at full speed. The gripman did not put on the brake to stop the car until just as it struck the wagon.

At the close of plaintiff's evidence, and again at the close of all the evidence, the defendant interposed a demurrer thereto, which was refused and defendant excepted.

The court over the objection and exception of defendant instructed the jury in behalf of plaintiff as follows:

"1. The jury are instructed that if they believe and find from the evidence that defendant was, on the 29th day of October, 1894, operating a railway upon and over certain streets and highways in Kansas City, Jackson county, Missouri, and upon and over Summit street, between 20th and 21st streets in said city, and was at said time engaged in the business of transporting passengers for hire over said last named line of railway; that plaintiff was, on said 29th day of October, 1894, and prior thereto, the wife of Patrick Sweeney, deceased; that this suit was brought within six months next succeeding the death of her said husband, deceased; that on said 29th day of October, 1894, her said husband took passage upon one of the cars of defendant's railway as a passenger; that said defendant railway company received and accepted her said husband as a passenger upon its said cars; that said defendant, by its agents, servants and employers in charge of the cars upon which plaintiff's said husband was riding as aforesaid, so negligently, carelessly and unskillfully managed, operated and conducted said cars at a point on Summit street, between 20th and 21st streets, in said city, as to cause said cars and the person of plaintiff's said husband to be brought into violent contact with a broken down wagon and obstruction which was at said time upon and in close proximity to the tracks of the defendant at said point, injuring plaintiff's said husband and causing his death, that the agents, servants and employees of the defendant in charge of the said cable cars upon which plaintiff's said husband, deceased, was then riding, saw or would, by the exercise of the care required of them, as set out in instruction No. 3, have seen the broken-down wagon or obstruction upon and in close proximity to said track in time to have stopped said cars, and have avoided the injury to plaintiff's said husband, but negligently and carelessly failed to stop said cars and prevent said injury and killing; and that plaintiff's said

husband was himself, at the time of the happening of the injury in question, in the exercise of ordinary care, then your verdict must be for the plaintiff. ·

"2. By the term, 'ordinary care,' as used in these instructions, is meant that degree of care which an ordinarily careful and prudent person would use under like or similar circumstances.

"3. The jury are instructed that if you believe and find from the evidence that the defendant, at the time of the occurrence in question, received and accepted the plaintiff's said husband, deceased, as a passenger upon a car which it was then operating, then the degree of care which defendant and its employees were bound to exercise towards plaintiff's said husband, while he was so being carried upon said cars, was this: defendant was bound to run and operate its cars with the highest practical degree of care of a very prudent person engaged in like businesss, in view of all the facts and circumstances as shown in evidence, at the time of the alleged killing of plaintiff's said husband; and defendant is liable in this case, if its agents, servants and employees in charge of said cars were guilty of even slight negligence in the management and operation thereof, if the jury further find and believe from the evidence that the death of plaintiff's said husband was the result of such negligence, and that plaintiff's said husband was at the time of the happening of the occurrence in question exercising ordinary care himself.

"4. The court instructs the jury that if you find for the plaintiff, your verdict will be for the sum of five thousand dollars."

And thereupon the defendant prayed the court to give instructions as follows:

"1. If the jury believe from the evidence that the injuries received by the plaintiff's husband were the result of an accident, merely, then plaintiff can not recover, and your verdict must be for the defendant.

"2.    Although the jury may believe from the evidence that the husband of plaintiff asked the gripman to stop the car and let him off at 20th street; and although the jury may further believe that had said gripman so stopped at 20th street, the deceased would have gotten off at that point, yet this can not be considered by you in determining whether the gripman exercised the care required in seeing the obstruction upon the track, and in stopping the car so as to avoid a collision therewith.

"3.    The court instructs the jury that they are the sole judges of the credibility of witnesses, and if they believe that any witness, either in his deposition or before the court, has willfully testified falsely as to any matter material to the questions involved in the case, then they are at liberty to disregard the whole of the testimony of such witness.    In determining the weight to be given the testimony of any witness, the jury may take into consideration the chance they had of seeing and knowing what they are talking about, and all the other facts and circumstances in evidence.

"4.    The court instructs the jury that there is no claim made in this case that the car was defectively constructed, or that it was not properly provided with all the necessary appliances for stopping the same, and in arriving at your verdict you will do so on the basis that said car was in all respects properly constructed and properly equipped for use on said railway.

"5.    The court instructs the jury that it is not claimed in this case that the gripman and conductor operating the car on which plaintiff's husband was riding, or either of them, were incompetent men; nor is it claimed that the track of the defendant's road was not properly constructed, or that the same was out of repair; nor is it claimed that the motive power as used on defendant's road was in any way defective, or insufficient, and you will not consider any such matters in arriving at your verdict.

"6. The court instructs the jury, that there is no claim made in this cause that either the gripman or conductor was an incompetent party for the position; or that the sand-box, the brakes, the grip, the track, the roadway and all other appliances for propelling or stopping the car were not properly constructed, and in suitable repair; and in arriving at your verdict it will be your duty to consider the gripman a competent party for the position, and that all said appliances for propelling or stopping the cars were properly constructed and in suitable repair.

"7. The court instructs the jury that it is wholly immaterial what other persons, if any, have been injured at other times and places on or by the defendant's cars, and all such testimony will be disregarded by you in arriving at your verdict.

"8. The jury must find that the cable track was constructed on the proper grades, and if they further find from the evidence that the direct and proximate cause of the injury to plaintiff's husband was the character of the grade of Summit street, at the place where such injury occurred, the plaintiff can not recover, and your verdict must be for defendant.

"9. If the jury believe that the direct and proximate cause of the injury to plaintiff's husband was the breaking down of a coal wagon on or near the cable railway track, then plaintiff can not recover and your verdict must be for defendant.

"10. The jury are instructed that all of the instructions given you in this case are the instructions of the court, and should be taken and considered together by you in arriving at your verdict.

"11. If the jury believe from the evidence that the deceased, Patrick Sweeney, voluntarily left his seat upon the open gripcar and stepped out on the running-board and was riding thereon, and if you believe that such position under

the circumstances was an unsafe one for a passenger to occupy, and that had he not been so standing he would not have been injured, then he can not recover, and this is true notwithstanding you may believe from the evidence that the defendant permitted passengers to ride on the running-board.

"12. If the jury believe from the evidence that the defendant, Patrick Sweeney, voluntarily left his seat an the gripcar and took a position on the running-board, where he was riding at the time he was injured, and if they believe that he would not have been injured had he remained in his seat, then he can not recover, unless you further find and believe that his position of danger was seen by the gripman, after the deceased was in peril, in time to have stopped the car and avoided the collision.

"13. The defendant asks the court to declare the law to be, that under the pleadings and evidence the plaintiff can not recover."

These instructions were all given with the exception of the eleventh, twelfth and thirteenth, and to the refusal of the court to give these defendant duly excepted at the time.

The first point for consideration is with respect to the action of the court in refusing the instructions asked by defendant in the nature of a demurrer to the evidence, defendant insisting that if there was any evidence of negligence on defendant's part, Sweeney must be charged with default in the same respect. In other words if there was any evidence of negligence on defendant's part that there was also evidence of contributory negligence on Sweeney's part, contributing to his injury, and this being the case plaintiff was not entitled to recover. In support of this contention it is argued that the gripman had the right to assume that the wagon would move out of the way until something appeared showing that it could not move.

When an adult person is injured by being run over by a railroad train while upon its track, in a suit by him or his representatives against the company for damages for such

injury, it has been held that the engineer in charge of the train, had a right to assume that he would at once on its near approach step off the track to a place of safety. [Sinclair v. Railroad, 133 Mo. 233; Boyd v. Railroad, 105 Mo. 371; Bunyan v. Street R'y, 127 Mo. 12.]

But no such presumption is to be indulged in an action by a passenger against his carrier whose implied contract is to carry him safely, and if he be injured by the carrier while the relation of carrier and passenger exists, the burden is upon it to show that the injury was not occasioned by its negligence. As to a person to whom the carrier owes no duty only ordinary diligence is required in order to prevent injury, while in the case of a passenger the greatest care is required. In the case at bar the moving cause of the injury was defendant's cars. Moreover the rule does not apply in any case to such obstructions as a broken down wagon.

There was evidence tending to show that at the time of the collision the gripman was engaged in conversation with a passenger, and was not looking in the direction that the train was moving, that he paid no attention to the warning of the driver of the coal wagon, which he could have seen as well as the broken wagon on the track in time to have stopped the car, had he been looking down the track in the direction the train was moving. Four or five witnesses, including one for defendant, who were passengers on the train at the time, testified that they saw the wagon on the track when the cars were from fifty to one hundred and twenty-five feet from it.

It was the gripman's duty to keep a lookout along the track for persons and obstructions; and if by having his attention on the track in front of the cars he could have discovered the warning of Colton and the wagon in time to stop the cars, and thereby avoid the injury it was his duty to do so. [Baird v. Street Railway, 146 Mo. 265; Parker v. Street Railway, 69 Mo. App. 54.]

If he could have seen the wagon on the track, in time to stop had he looked, the presumption is that he did not look,

·or, if he did look that he did not heed what he saw, so that in either case he was negligent.

It thus appears that there was ample evidence tending to show that defendant was guilty of negligence contributing to the injury of Sweeney to take the case to the jury, and, that the demurrers thereto were properly refused, unless the evidence also shows that Sweeney was guilty of negligence contributing directly to his own injury.

He had called the attention of the gripman to his purpose to get off the cars at Twentieth street, and, had left his seat in the car, and gone out on the running-board so as to be ready to get off when they stopped, but the gripman unmindful of his duty to him as a passenger did not for some reason stop at that point but proceeded, stating that he would stop at the next crossing which was Twenty-first street.

If, however, Sweeney had voluntarily assumed a dangerous position and was by reason thereof injured he was guilty of contributory negligence, but as he could not have gotten off the cars without stepping upon the running-board, and had only done so for the purpose of getting off at Twentieth street, he did not voluntarily assume such position and was not guilty of contributory negligence in so doing and remaining there for so short a space of time as was required for the cars to reach the next street where it had been announced by the gripman they would stop; even though there were unoccupied seats in both cars.

The case does not, therefore, come within the rule that one who voluntarily takes a position upon the foot board of a street car running upon a public street may be reasonably charged with knowledge of the danger, and guilty of negligence *per se*, as announced in the authorities cited by defendant, viz.: Clark v. Railroad, 36 N. Y. 135; Ray on Negligence of Imposed Duties (Passenger Carriers), pp. 44, 45; Booth on Street Railways, sec. 341-344; Denver Tamway · Co. v. Reid, 45 Pac. Rep. 379; Ashbrook v. Street Railway,

18 Mo. App. 290; Gilly v. Railroad, 21. So. Rep. 850; Aikin v. Railroad, 21 Atl. 781.

It is further argued, that if the gripman could have seen and heard a warning of danger in time to have stopped his train, Sweeney likewise could have seen and heard it in time to have stepped back in to his seat and in that way have avoided the injury. In answer to this contention it may be said that even if Sweeney saw the danger in time to have stepped back to his seat or a place of absolute safety, he had the right to assume that he would be carried safely, and, that the gripman would see the obstruction and stop in time to prevent a collision with the wagon. Nor is a passenger who is confronted by a sudden danger and fails to exercise what might seem to others the best judgment in every case guilty of negligence.

It is next claimed that error was committed in refusing the eleventh instruction asked by defendant. This instruction was correctly refused for reasons already stated, that is, that Sweeney was not under the circumstances guilty of contributory negligence in leaving his seat and standing on the running-board at the time of the accident.

It is vicious for the further reason that it prohibits plaintiff's recovery if deceased voluntarily left his seat and stepped out on the running-board and was standing there at the time of the accident, if the position was an unsafe one, and in consequence of which he was injured, regardless of the fact of defendant's duty to exercise the greatest care to carry him safely, notwithstanding he may have assumed an unsafe position. He was where passengers were accustomed to ride and the fact that he may have been in an unsafe place did not absolve defendant from its duty towards him as a passenger.

The refusal of the twelfth instruction asked by defendant is also assigned as error. This instruction is faulty and was properly refused because it assumes that the position of

Sweeney on the running-board at the time of the accident was an unsafe and dangerous place, and this being so, plaintiff could not recover, although defendant's servants may have been guilty of negligence in the management of the train, thereby causing the injury.

John H. Twyman, who was a witness for defendant was a passenger on the gripcar at the time of the accident and sitting on the west side of the car back of the gripman, testified that the gripman did nothing towards stopping the car until just as he struck the wagon. He had previously testified on an inquest held as to the death of Sweeney, and upon his cross-examination in this case he was asked this question: "Q. Now before, before the coroner's jury you were asked this question: "As far as you know, do you think the gripman did all he could to stop the train before it reached the wagon?"

The question was objected to and the objection sustained upon the ground that it called for an improper conclusion. The purpose of the question was to contradict the witness, and being with respect to a mere conclusion, was not competent for that purpose. The fact that the witness may have testified on a former occasion as to what he thought of the gripman's effort to stop the cars was not competent for any purpose in this. "The rule (that the proof of contradictory statements goes to the credibility of the witness) does not extend so far as to introduce previous expressions of opinions made by the witness." [McFadden v. Catron, 120 Mo. 252; 1 Thompson on Trials, sec. 493; Com. v. Mooney, 110 Mass. 99; Holmes v. Anderson, 18 Barb. 420.]

Plaintiff's third instruction is criticised upon the ground that it enlarged the issues, and that the decree of care exacted of defendant was too strict. As to the first proposition it seems to be untenable, and is not in accordance with what seem to us to be a fair construction of the instruction.

There is no question but that the degree of care required of street railway companies towards their passengers is the utmost care and diligence of very cautious persons. [Huelsenkamp v. Street Railway, 37 Mo. 537; Bryan v. Railroad, 32 Mo. App. 228; Story on Bailments (9 Ed.), sec. 600.]

In Waller v. Railroad, 83 Mo. 608, an instruction which told the jury that carriers of passengers, were bound to exercise the strictest vigilence in carrying them was approved by this court.

In Furnish v. Railroad, 102 Mo. 438, similar instructions were approved. So in O'Connell v. Street Railway, 106 Mo. 482, an instruction which told the jury that the degree of care which the defendant and its employees were bound to exercise towards the plaintiff who was a passenger was to run and operate its cars with the highest degree of care of a very prudent person, in view of all the facts and circumstances at the time of the alleged injury, met with the unanimous approval of this court. [See, also, Bischoff v. Street Railway, 121 Mo. 216.]

The instruction under comment, is substantially the same as those passed upon in the cases cited. The fact that in it the jury were told that defendant was liable if its servants were guilty of even slight negligence was nothing more than telling them that the law required of it the highest degree of care, and did not vitiate it.

Plaintiff's first instruction is challenged upon a number of grounds and of these in their order.

First, that it does not define negligence. This is a word the meaning of which is well understood and no definition of it was necessary. As used in the instruction it could not have been misunderstood by the jury, or in any way have mislead them.

Second, that it erroneously submits the question as to the ordinary care of Sweeney, when, as a matter of law, he

was negligent, and in any event limits the consideration of the jury to his negligence at the exact time of the injury. In answer to this contention it is only necessary to say that we have already said that Sweeney was not under the circumstances guilty of contributory negligence.

Third, that it assumes that there was a broken down wagon on the track, whereas the rear end of the wagon-bed came back almost to the track.

The language used in the instruction is "a broken down wagon and obstruction which was at said time upon and in close proximity to the track." The evidence shows that about one foot of the hind part of the wagon extended over the east rail of the track so that the instruction was substantially in accord therewith.

But even if it were not, it can not be considered as a controverted fact, for the reason that by defendant's second instruction it is assumed that there was an obstruction upon the track, and, the rule is that the assumption in an instruction of an issuable fact conceded by the other party is not erroneous. [Burlington First National Bank v. Hatch, 98 Mo. 376; Walker v. City of Kansas, 99 Mo. 647.]

Fourth, that it required the gripman to stop the cars, when he saw the wagon. The instruction is clearly not open to this objection. It only required the gripman to stop the car, if he saw, or would, by the exercise of the care required of him, as set out in instruction No. 3, have seen the broken down wagon or obstruction upon and in close proximity to the track in time to have stopped the cars, and avoided the injury. It did not require him to stop when he saw the wagon.

The instruction is we think free from substantial error.

For these considerations we affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.