GILROY, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, March 27, 1906.

1. **CARRIER OF PASSENGERS: Degree of Care.** A common carrier of passengers, such as a street railway company, is bound to exercise a high degree of care for the safety of its passengers, that is, such care as a very prudent person would exercise under similar circumstances.

2. **————: Street Railways: Ordinance Defining Stopping Places.** Although an ordinance of the city of St. Louis provided that street cars should be stopped on the further side and not on the near side of an intersecting street for passengers to get on and off, yet where a street railway company was accustomed to stop on the near side at which point there was a switch, for the purpose of receiving and discharging passengers, and where a passenger, in attempting to get off a car which was stopped there for that purpose, was injured by the premature starting of the car before he could get off in safety while exercising ordinary care, the street railway company was liable to him in damages for the injuries received.

3. **————: ————: Practice: Superfluous Instruction.** Where the instructions to the jury sufficiently and fully submitted the theory of the defendant, it was not error to refuse other instructions asked by the defendant.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Boyle & Priest, George W. Easley* and *Glendy B. Arnold* for appellant.

*Ernest E. Wood* for respondent.

STATEMENT.—In November, 1903, the defendant operated street cars over Grand avenue and Natural Bridge road, in the city of St. Louis. Grand avenue runs north and south and crosses Natural Bridge road (running east and west) at the southeast corner of the Fair Grounds. The defendant's Eighteenth street, Cherokee and Jefferson avenue lines are deflected west at this point on to Natural Bridge road by a switch located in Grand avenue about fifty feet south of the south line of Natural Bridge road. Cars running north on Grand avenue usually have to be stopped or slowed down to enable the motorman to throw the switch. On November 1, 1903, the plaintiff was a passenger on one of defendant's cars, traveling north on Grand avenue. His residence was in the neighborhood of the crossing of Grand avenue and Natural Bridge road, and when the car arrived at the switch, it was stopped or nearly so, and the plaintiff attempted to leave the car and fell or was thrown to the street and injured. The suit is to recover for the injury. It was brought against the St. Louis Transit Company and the United Railways Company, and the verdict was for plaintiff against both defendants. On motion of defendant United Railways Company, the verdict was set aside as against it but was permitted to stand against the transit company and it alone appealed.

Plaintiff's evidence tends to show that it was, and had been for a number of years, the custom of the defendant's servants, operating cars traveling north on

Grand avenue, to stop the cars at the switch for passengers to get off and on, and that plaintiff had habitually alighted from cars at this point for several months prior to his injury. The evidence also tends to show that the cars did not usually stop on the north side of Natural. Bridge road and if passengers, desiring to get off at that point, did not alight when the car stopped at the switch, they would be carried to the next street north before they would have an opportunity to leave the car. In regard to the facts attending plaintiff's injury, his testimony tends to show that just before the car reached the switch, he gave the usual signal of his wish to leave the car, and the conductor, in response to the signal, gave the motorman a bell to stop at the switch; that the car stopped and plaintiff proceeded to alight; that two other passengers preceded him and reached the street in safety, but when plaintiff reached the lower step of the rear platform, the car was started forward with a sudden jerk, causing plaintiff to fall upon the street, resulting in serious and permanent injury to one of his hips.

Defendant read in evidence the following city ordinance, to-wit:

"Street cars shall be stopped for taking or discharging of passengers as follows: Those going southward shall stop on the south side of the intersecting streets; those going northward shall stop on the north side of the intersecting streets," etc.

And offered evidence tending to show that its carmen were instructed and required to observe the ordinance, and that the managing officers of the company had never given their assent to the discharging of passengers from its north-bound cars running on Grand avenue at the switch, and if such was the practice they were wholly ignorant of it. The defendant's evidence also tends to show that the employees of the company did not stop cars at the switch for the purpose of receiving and discharging passengers, and further tends to show that the plaintiff did not signify to the conductor

his desire to leave the car at the switch; that the conductor did not give the motorman a bell to stop at that point and the car did not come to a full stop, but the speed was checked sufficiently to enable the motorman to reach over the vestibule with a bar and throw the switch; that while the car was thus moving slowly, plaintiff hurried out, descended the step and stepped off in the opposite direction from which the car was moving and fell into the street.

BLAND, P. J. (after stating the facts).—Error is assigned in the giving of plaintiff's instructions, and also in the refusal of certain instructions asked by the defendant. Plaintiff's instructions are as follows:

"1. The court instructs the jury that a common carrier of persons, such as a street railway company, carrying passengers for profit, is bound to exercise a high degree of care for the safety of its passengers, that is, such care as a very prudent person would exercise under similar circumstances.

"2. The court instructs the jury that if you find and believe from the evidence that the plaintiff in this action was a passenger on one of the cars owned and operated by the defendants on the first day of November, 1903, and that the car upon which the plaintiff was a passenger stopped at a usual stopping place established by defendants where by custom it was a practice for passengers to leave the car, at or near the intersection of Natural Bridge road with Grand avenue of the city of St. Louis, State of Missouri, and that while the car was so stopped plaintiff attempted to alight therefrom, and that while plaintiff was leaving the said car and before he had time to safely leave it, the said car, on account of negligence of the agent of the defendants in charge thereof started suddenly forward causing plaintiff to be thrown to the street whereby he was injured, and that plaintiff was at the time exercising ordinary

care for his own safety, then you should find in favor of the plaintiff and against the defendants.

"3. The court instructs the jury that after a street car has once stopped at a usual stopping place where passengers leave the cars, it is then the duty of the agents in charge thereof to exercise a high degree of care to prevent the starting of the car while any passenger or passengers are attempting to alight therefrom. And if the jury believe from the evidence that the plaintiff was a passenger on a car operated by the defendant, and that the car stopped on Grand avenue in the city of St. Louis at a usual stopping place, and that while plaintiff was attempting to alight therefrom the agent or agents of the said defendants in charge of its said car failed to exercise a high degree of care to prevent the starting of the car while the plaintiff was in the act of alighting therefrom and the failure, if the jury so find, to exercise said high degree of care caused plaintiff to be injured, and that plaintiff was in the exercise of ordinary care, then the jury should find for the plaintiff and against the defendants.

"4. If under the evidence and the instructions the jury find in favor of the plaintiff, you will assess his damages at such sum as you believe from the evidence will fairly compensate plaintiff for such injuries, if any, as you find from the evidence he sustained at the time of the accident mentioned in the evidence, and in assessing the damages of the plaintiff, if the jury find in his favor, you will take into consideration the nature and character of the injuries, if any, sustained by the plaintiff at the said time, the pain and suffering and mental anguish plaintiff has endured, if any, as a direct result of his injuries sustained at the time of the accident; the pain of body and mental anguish you believe from the evidence plaintiff will suffer in the future as a direct result of the injuries, if any, sustained at the time of the accident; the reasonable valuation of the loss of time, if any, which the jury believe from the evidence

plaintiff has been compelled to lose from his occupation as a direct result of the injuries sustained at the said time; the reasonable valuation of the loss of time, if any, the jury believe from the evidence plaintiff will be compelled to lose in the future as a direct result of his injuries sustained at the time of the accident; and the reasonable valuation of the medical service, if any, necessarily rendered the plaintiff as a direct result of the injuries sustained at the time of the accident, which you believe that the plaintiff is legally bound to pay."

The first instruction given for plaintiff properly declared the degree of care a carrier of passengers is required to exercise for their safety. [Lemon v. Chandler, 68 Mo. 340; Furnish v. Railway, 102 Mo. 438, 13 S. W. 1044; O'Connell v. Railway, 106 Mo. 482, 17 S. W. 494; Clark v. Railroad, 127 Mo. 197, 29 S. W. 1013; Magrane v. Railway, 183 Mo. 119, 81 S. W. 1158; Posch v. Railroad, 76 Mo. App. 601; Chouquette v. Railway, 80 Mo. App. 515; Muth, Exr., v. Railway, 87 Mo. App. 422; Young v. Railway, 93 Mo. App. 267; Tillman v. St. Louis Transit Co., 102 Mo. App. 553, 77 S. W. 320; Robinson v. Railway, 103 Mo. App. 110; 77 S. W. 493.] And the rule applies as well to street as to steam railroads. [Willmott v. Railway, 106 Mo. 535, 17 S. W. 490; Jackson v. Railroad, 118 Mo. 199, 24 S. W. 192; Sweeney v. Railway, 150 Mo. 385, 51 S. W. 682; Buck v. Railway, etc., 46 Mo. App. 555; Powers v. Railway, 60 Mo. App. 481; Parker v. Railway, 69 Mo. App. 54; Freeman v. Railway, 95 Mo. App. 94, 68 S. W. 1060; Heyde v. St. Louis Transit Co., 102 Mo. App. 537, 77 S. W. 127.]

Plaintiff's second and third instructions are grounded on the theory, that notwithstanding the city ordinance required cars running north to stop on the north side of intersecting or cross streets, yet if it was and had been the custom of the defendant's servants operating cars on Grand avenue, to stop cars traveling north at the switch to receive and discharge passengers, and the car

on which plaintiff was traveling was stopped at that point, and plaintiff, using ordinary care, undertook to alight, and the car was started before he could get off, causing him to fall upon the street, and injury resulted, the defendant was liable.

In McCarty v. Railroad, 105 Mo. App. l. c. 601, 80 S. W. 7, this court, through GOODE, J., said: "If there was a usage to take passengers at the switch, the carmen would have been bound to watch and be as careful about starting there as at far-crossings, the common and appropriate localities for taking passage; for then persons would have the right to board cars and the operatives good reason to expect them to do so. [Washington, etc., Railroad v. Grant, 11 App. Cas. (D. C.) 107; McNulta v. Euch, 134 Ill. 46; West Chicago St. Ry. v. Manning, 170 Ill. 417; Id., 70 Ill. App. 239.]"

The instructions are in harmony with the doctrine of the McCarty case and are approved.

The court gave the following instructions for the defendants:

"3. If you find from the evidence that the plaintiff stepped from or left the car while the same was in motion, even though the said motion may have been slight, and as a result he was thrown and injured, your verdict will be for the defendants.

"7. The court instructs the jury that the opinions of expert witnesses are admissible in evidence, and are to be given such weight and value as the jury may think right and proper under the circumstances. The value of an expert opinion depends not only upon the qualifications and experience of the witness, but the facts which he takes into consideration and upon which he bases his opinion. If the facts assumed, and which are made the basis of the opinion, are not true and are not established by the proof, then the opinion has no basis upon which to rest, and would be of no value, and in weighing such opinions, the jury must look to see whether the facts assumed by the expert witness are established by the

proof or not, and you cannot take the facts assumed by the expert witness to be true simply because they were so assumed, but you must look to the proof to determine whether they are proved or not.

"8. If you find from the evidence that the purpose of stopping the car or cars of the defendant on the south side of Natural Bridge road at its intersection with Grand avenue was (only) to permit or enable the motorman to throw the switch in order that his car might proceed north or west as desired, and that while said car was stopped and the motorman was engaged in throwing the switch persons got upon or got off the car, this does not establish such a custom and practice, and does not impose any duty upon the defendant to stop the car on which the plaintiff was a passenger at said point for the purpose of allowing him to alight; and if you find from the evidence that the car was either stopped or slowed down and continuing in motion, however slight, upon the occasion when the plaintiff was a passenger (only) for the purpose of enabling the motorman to throw the switch that his car might proceed north, and that the plaintiff attempted to alight from said car, either while the car was standing still south of Natural Bridge road, or moving slowly, and was thereby thrown to the ground and injured, plaintiff is not entitled to recover and your verdict will be for the defendants.

"12. The burden of proof is on the plaintiff to show by the preponderance of the evidence that defendant's car came to a stop at place of the accident — that while plaintiff was in the act of alighting the car was sudenly moved forward without notice to plaintiff and plaintiff was thrown to the street and injured, and then plaintiff is not entitled to recover unless he has shown by the preponderance or greater weight of the evidence that defendant transit company had established by custom and practice a stopping place for passengers to alight at the place where the car stopped or slowed down south of the switch. And unless plaintiff has so shown

by the preponderance of the evidence all the foregoing facts you will find for defendants."

These instructions presented the theory of the defense fully and were favorable to the defendant, hence it has no ground to complain that error was committed in refusing other instructions asked by it.

The judgment is affirmed. All concur.