## FUNCTION OF THE TRIAL JUDGE WHERE THE FACTS ARE CONCEDED.

Common Pleas Court of Franklin County.

FRED DAVIS v. THE COLUMBUS RAILWAY & LIGHT COMPANY.

Decided, December, 1913.

*Determination of the Legal Sufficiency of the Facts Presented—Is a Function of the Judge and Not of the Jury—Judgment Granted on the Petition and Opening Statement of Plaintiff's Counsel to the Jury.*

1. A motion by a defendant for judgment on the petition and the opening statement made to the jury on behalf of the plaintiff, lies where it appears from the petition and the statement of counsel that the plaintiff left his seat in the car nearly a square distant from the point where he expected to alight, and took his stand on the running-board and looking backwards instead of forward, was struck and injured by a wagon which was in full view and an obvious danger, and which the car passed while running at its usual rate of speed.

2. An application for leave to amend a petition made during pendency of motion for non-suit, will be denied, where it appears that nothing could be stated by the plaintiff which would disclose a right of recovery.

*Weinland & Scarlett,* for plaintiff.
*Booth, Keating, Peters & Pomerene,* contra.

KINKEAD, J.

Motion is made by defendant for judgment upon the pleadings and opening statement made to the jury on behalf of plaintiff.

It is alleged that:

"Plaintiff, desiring to leave said car at Norwich avenue * * * rose from his seat after the said car passed Lane avenue, stepped to the running-board on the right side of the car in order that he might leave said car promptly at Norwich avenue, and stood upright on said running-board, holding, with his hands to two hand grasps and looking at the same time toward

the conductor, who was in the rear part of said car, in order to signal for his stop. While plaintiff was attempting to signal the conductor for his stop, the defendant's motorman  *  *  * negligently drove the same past the said wagon, and thereby hurled plaintiff  *  *  *  with great force against said wagon," etc.

"The said collision and  *  *  *  injuries were caused solely by the negligence and the lack of proper care of the defendant in the following respects:

"(1)  The negligent driving and operation of the said car in such manner that a person on the running-board would and did come in violent contact with the said wagon; and

"(2)  The failure of defendant's employees in charge of said cars to give notice and warning to said plaintiff of the danger from said wagon."

The opening statement discloses that the accident occurred in daylight; that the wagon was in plain sight so the motorman and conductor could see it; that plaintiff was struck instantly on stepping on the running-board; that the speed of the car was the usual speed.

The expression so often made and found in the books that the question is one for the jury, under the particular circumstances of the case, to determine whether a party was negligent or not, is sometimes used as an excuse for accurate perception and proper reasoning and logic and perspicuity of statement.

It is the function of the jury to decide controverted facts, and to draw inferences from facts when rational and reasonable minds may differ as to the appropriate inference.

It is the function of the judge to charge the law applicable to the different phases of facts shown by the evidence, or to the different views which the jury may take concerning controverted facts.

To state, as in the opinion in *Traction Co.* v. *Bryant,* 30 Tex. App., 437, "and whether the passenger be standing upon the platform, running-board or steps, is held to be in the majority of cases a question for the jury to determine" does not set forth a logical or correct proposition of procedural law.

The same objection may be made to the first proposition in the syllabus in *Vessels* v. *Ry. Co.,* 129 Mo. App., 708, namely:

"Whether it is negligence for a passenger with the knowledge and implied assent of the trainmen to take a position on the careless safe than that of riding in a seat is a question for the jury."

The reports and books are full of such loose and meaningless statements. They do not at all correctly state the proper function of judge and jury.

On conceded facts, from which there may be only one rational conclusion drawn, as for example, that a party has not observed ordinary care, or that no duty has been violated, presents no question of fact for a jury, but merely invokes the function of the judge in applying the law.

So in this case as it is presented by the petition and the opening statement, the facts as pleaded and as stated in the opening statement are conceded but their legal sufficiency is questioned.

In other words, do they state a cause of action against defendant? To decide that makes it necessary to determine whether actionable negligence on the part of the defendant is shown, and whether plaintiff himself was negligent. If it should be concluded that it shows that both parties were negligent, it would be essential to determine whose negligence caused the injury.

It is held that:

"In the absence of any special circumstances, such as a regulation of the railway company properly published or brought to the knowledge of the passenger (*Cutts* v. *Boston Elevated Railway*, 202 Mass., 150), or the existence of known or probable dangers calling for special care to avoid them, it is for the jury to determine the negligence or due care of a passenger who is riding upon a more exposed part of a street railway car, such as the front or rear platform or the running-board of an open car." *Heshion* v. *Railway*, 208 Mass., 117, 118, ,citing *Beall* v. *Railway*, 157 Mass., 444; *Sweetland* v. *Lynn*, 177 Mass., 514; *Pomeroy* v. *Ry.*, 193 Mass., 507; *Eldridge* v. *Boston Elevated Ry.*, 203 Mass., 582.

To state that the defendant's motorman negligently drove the same (that is, the car) past the wagon may be characterized

as a general allegation of negligence, which under the rules of pleading is said to be good as against demurrer.

But this so-called general allegation becomes merged into the specific acts of negligence subsequently alleged which consist of "the negligent driving and operation of the said cars in such manner that a person on the running-board would and did come in violent contact with wagon," and the failure to give notice and warning to the plaintiff.

So we proceed upon these more specific alleged acts of negligence.

The indefiniteness and uncertainty of the first specification is cleared up by the opening statement. It is claimed that the car was run at its ordinary rate of speed past the wagon, and that no notice or warning of the danger from the wagon was given. It is also stated the plaintiff got up from his seat in the car just before the car reached the wagon and that he was struck instantly on stepping on the running-board. This discloses that plaintiff proceeded to the running-board to place himself in readiness to alight quite a distance before reaching the place where he was to alight.

From the opening statement it appears that one passenger on the first car had started to get on the running-board, but discovering the danger from the wagon he desisted. From this statement, and in the absence of an allegation otherwise, and from the fact that plaintiff was struck immediately upon getting on the running-board it must be concluded that no passenger or passengers were riding on the running-board at the time the motorman drove the first car past the wagon.

These must be the facts to which the court is to apply the law. If not, full and fair opportunity will be afforded counsel to further state the facts.

That being so, there was then no necessity or occasion for running the car exceedingly slow, or to warn any one of the danger.

The motorman and conductor had the right to assume that plaintiff would observe ordinary care for his own safety; they had the right to assume that the plaintiff—as did the passenger

in the front car—would not leave a place of safety and step down on the running-board, without using his senses and discovering the danger.

While it was the duty of the servants of the defendant to observe the utmost care and vigilance to protect the plaintiff as a passenger, this measure of care and duty exacted of defendant does not require it to guard against the negligence of plaintiff, excepting and only when it discovers him to be in a place of danger through his own acts.

The rule that it is not *per se* negligence to ride on the running-board can not apply to the conduct of plaintiff in this case. He was not riding on the running-board; he had just stepped down on it, getting in readiness to alight quite a distance before reaching his alighting place, and was instantly struck by the wagon.

The servants had no opportunity to warn him of his danger. This, therefore, disposes of all the claims that are made by plaintiff against defendant as to negligence on its part.

Plaintiff can not avail himself of the municipal ordinance requiring street cars to move at a certain speed past such a wagon, and to give warning, because, in the first place, it is not pleaded. In the second place, plaintiff was not riding on the running-board, but had merely stepped there in readiness to alight.

In respect to the conduct of plaintiff, it will not do to merely say, as in *Mason* v. *Railroad,* 180 Mass.. 225, that: "Riding on the running-board of an open electric car can not be said to be negligence of itself and as matter of law." That is beside the question and does not apply here. Merely riding on the running-board is not, as matter of law, negligence. It was stated by this court in *Spencer* v. *Cols. Ry. & L. Co.,* No. 63,399:

"The law is that it is not *per se* negligence for a person to ride on the running-board. Whether or not he is negligent depends upon the particular circumstances in the special case. Of course it is obviously more dangerous to ride on the step or running-board, and notwithstanding the fact that the company may customarily permit passengers to ride on the running-board, a duty is imposed upon a passenger so placing himself on

the car. The law exacts of him that he shall be careful and prudent.''

The plaintiff was bound to observe ordinary care for his own safety; such degree of care requires that he use his sense of sight. If he had looked at all in the direction he was going even as he stepped towards the running-board, he could have seen the wagon and discovered the danger. It was an obvious one to any one desiring to do what he was about to do. Instead, as the petition avers, he was looking backward toward the conductor, who was checking up his accounts. It was clear that it was some little time before the conductor would look out for the stop. Though a passenger is not guilty of contributory negligence *per se* in riding on the running-board, he is bound to exercise reasonable care, and if he fails so to do is guilty of contributory negligence. (Note 8 St. Ry. Reports.)

The plaintiff in choosing to step on the running-board assumed all of the ordinary risks, which included the danger from wagons standing as this one was. It did not include the negligence of defendant. But our reasoning eliminates this question.

The question here is wholly unlike that in *Mason* v. *Railway,* 180 Mass., 255. There the plaintiff stepped on the running-board to alight and while walking along to get a bundle he had left in a seat was struck in the head by a pole placed and maintained by defendant. Of course, it was not negligence as matter of law for the passenger in such case to do what he did. The placing and maintenance of the pole under such circumstances was negligence.

So in *Sweeny* v. *Cable Co.*, 150 Mo., 385, where the gripman negligently ran into a broken wagon, which he could have seen had he been looking out, and as to which he was warned by a passenger, the court held that there was ample evidence of the negligence of the defendant to take the case to the jury, and that the plaintiff was not guilty of contributory negligence in being on the running-board, even though the evidence showed that other passengers standing thereon jumped back into the car to escape injury.

It is not essential that a car stop on account of a wagon situated as this one was. The standard of duty fixed by municipal ordinance does not require it unless it becomes essential. It had a right under the circumstances of this case to pass by it. And persons who are in the habit of riding on street cars of the city are expected to be aware of the customary habits of cars of the railway in passing such wagons.

A broken wagon in such close proximity to a passing car as to endanger the safety of passengers on a running-board, as in *Sweeny* v. *Cable Co.*, 150 Mo., 385, is not one of the customary ordinary risks assumed by a passenger on a running-board.

The case of *Heshion* v. *Boston Elevated Ry. Co.*, 208 Mass. Reports, 117, is clearly in point: ·

"If one, who had been employed by a street railway company as a conductor for three years, becomes a passenger upon an open electric street car of the same company, takes his position upon the running-board and, as the car passes through a very busy street with which he is entirely familiar and in which there is a space of eight feet and two inches from the running-board to the curbstone, stands holding to the unrights of the car, facing the car's interior and not looking out to see whether he is in danger of coming into contact with teams or obstructions in the street, and is struck by the pole of a cart which he easily could have seen had he looked in the direction in which the car was going, and could have avoided by temporarily stepping into the car between the seats or drawing himself farther into the car, he can not be said to have been in the exercise of due care, since with a knowledge of the dangers attending his position, he disregarded them."

The conclusion must be that the conceded claims made by plaintiff merely invokes the duty of the court to apply the law thereto and pronounce judgment.

To decide otherwise would require the court to adopt a rule of care which would impose a duty upon the motorman to do the impossible thing of looking backward to see if any passenger was going to place himself in a position of danger without observing what he was doing. Or it would require the conductor to stand on watch to discover whether a passenger was looking out for

and protecting himself from a usual and obvious peril arising from stepping upon a running-board, such as is mentioned in *Elliott* v. *Ry. Co.*, 18 R. I., 707.

It is stated in this case that:

"A passenger who rides on the footboard of a car necessarily takes on himself the duty of looking out for and protecting himself against the usual and obvious perils of riding there, such, for instance, as injury from passing vehicles."

It is equally true that he is obliged to look out for and protect himself from vehicles standing as the one in this case was, and over which defendant had no control.

Before announcing this opinion application was made to the court by counsel for the plaintiff for leave to amend the petition.

After hearing the argument the court concluded that as the jury had been impanneled and a motion had been submitted for judgment upon the pleadings and upon the opening statement of counsel, that the court under such circumstances had no discretion to grant such application. The rule is properly expressed in *Rau* v. *Risiden*, 11 C.C.(N.S.), 255:

"The power to discharge the jury in a civil cause during trial or after the cause is submitted and before verdict is not discretionary in a court, but must be based on a finding that some necessity exists for such action, or upon consent of both parties, and where the record discloses no necessity for such action beyond a bare request by the plaintiff, and no consideration by the court of the necessity for so doing, the discharge is unauthorized and deprives the court of further jurisdiction, and a motion to dismiss should be granted."

The conclusion of the court is that the application to amend shall be denied, for the reason that it is plain under all the circumstances now appearing to the court that nothing could be stated by plaintiff to disclose a right of recovery. The judgment of the court is that the motion for a judgment on the pleadings and the opening statement of counsel is sustained, and the action of the plaintiff is dismissed.